**HOTEL CONSTRUCTORS, INC., an Illinois corporation, Plaintiff,**

v.

**The SEAGRAVE CORPORATION, a Delaware corporation, Vista Resources, Inc., a Delaware corporation, Western Vista Corp., a California corporation, and Herbert J. Kirshner, an individual, Defendants.**

**No. 81 C 5793.**

United States District Court, N. D. Illinois, E. D.

July 28, 1982.

Jay Erens, William E. Rattner, Norman G. Plotkin, Levy & Erens, Chicago, Ill., for plaintiff.

Reuben L. Hedlund, Kevin M. Murphy, Latham, Watkins, Hedlund, Hunter & Lynch, Chicago, Ill., Michael C. Silberberg, Geri S. Krauss, Golenbock & Barell, New York City, Edward S. Silber, Larry Selander, Keck, Mahin & Cate, Chicago, Ill., Shea & Gould, Graubard, Moskowitz, McGoldrick, Dannett & Horowitz, New York City, for defendants.

## ORDER

BUA, District Judge.

This is an action for breach of contract and fraud, brought by plaintiff, Hotel Constructors, Inc. (HCI), which is an Illinois

corporation with its principal place of business in Chicago. The Defendants, The Seagrave Corporation ("New Seagrave"), and Vista Resources, Inc. ("Old Seagrave"), are Delaware corporations each with a principal place of business in New York, New York. The Defendant, Western Vista Corp. ("Flour City") is a California corporation with its principal place of business in New York. The Defendant, Herbert J. Kirshner, an individual, resides in the New York area. Jurisdiction is proper under 28 U.S.C. § 1332, and venue is proper under 28 U.S.C. § 1391.

Plaintiff's claim arises out of a subcontract entered into by Morse/Diesel, Inc., as HCI's agent, and Flour City, whereby Flour City would complete the curtain wall of a 22-story hotel known as the Vista International Hotel, constructed on the plaza level of the World Trade Center in New York City. Plaintiff alleges that defendants unduly delayed the completion of the curtain wall at Flour City's plant in Minneapolis, Minnesota, and that defendants made fraudulent misrepresentations to HCI regarding the curtain wall's completion and thereby exacted substantial payments from HCI.

This cause comes before the Court on defendants' motion to transfer this action to the Southern District of New York under 28 U.S.C. § 1404(a). That motion is granted.

28 U.S.C. § 1404(a) governs change of venue and provides in pertinent part:

"(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

In order to meet the requirements of § 1404(a), the movant must establish "(1) that venue is proper in the transferor district; (2) that the transferor court has the power to transfer the case (that is, that the transferee court is in a district 'where it might have been brought'); and (3) that the transfer is for the 'convenience of parties and witnesses, in the interest of justice.'" *Hess v. Gray*, 85 F.R.D. 15, 24 (N.D.Ill.1979).

Requirements (1) and (2) are met in this case. Venue is proper in this district because plaintiff resides in Illinois for venue purposes, and this action could have been brought in the Southern District of New York, which has proper venue and jurisdiction because defendants reside there under 28 U.S.C. §§ 1332 and 1391.

The Court now turns to requirement (3). To support a motion to transfer, the movant must show a "clear balance of inconvenience" in this district over the transferee district. *SEC v. First National Finance Corp.*, 392 F.Supp. 239, 240 (N.D.Ill.1975). In determining whether the movant has met this burden, the Court must consider the factors specifically mentioned in § 1404(a) (convenience of the parties, convenience of the witnesses and the interests of justice in general) while also giving weight to plaintiff's choice of forum.

■ Although under the common law doctrine of forum non conveniens, plaintiff's choice of forum was an overriding factor entitled to considerable weight, the significance of that choice has diminished since the enactment of § 1404(a). *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955); *SEC v. First National Finance Corp.*, 392 F.Supp. at 242; *Y⁴ Design Ltd. v. Regensteiner Pub. Enterprises, Inc.*, 428 F.Supp. 1067, 1070 (S.D.N.Y. 1977). Additionally, plaintiff's choice of forum has reduced value where the forum lacks any significant contact with the underlying cause of action, *Cunningham v. Cunningham*, 477 F.Supp. 632, 634 (N.D.Ill. 1979). In such a case, it becomes just one of many factors to be viewed by the Court when making its determination of convenience. *General Signal Corp. v. Western Electric Co.*, 362 F.Supp. 878, 880 (N.D.Ill. 1973).

■ In the instant case, the question of where the conduct underlying this action occurred is disputed. Clearly, Chicago is where the defendants' alleged fraud arose in the meetings with plaintiff and its consultants regarding the delay in completion of the curtain wall. But, the breach of

contract action arose either at Flour City's plant in Minneapolis or at the construction site in New York. If the defendants did not knowingly cause the delay in performance (as determined at the Minneapolis plant) or if the delay was caused by changes in windload specifications or by poor coordination of work with other contractors at the construction site in New York, the determination of fraud could well hinge on events or conduct occurring outside of Chicago. For these reasons, Chicago is not conclusively where the cause of action arose and, therefore, plaintiff's choice of forum will be given equal consideration along with the other factors which must be considered under § 1404.

*Convenience of the Parties and Witnesses*

Although § 1404(a) specifically points to the convenience of both parties and witnesses, in the instant case, only the latter factor need be analyzed by the Court. The facts presented by this motion indicate that the convenience of the parties is neutral in this case. Both plaintiff and defendants will be inconvenienced if this action is brought in the other parties' resident district and the financial strengths of the parties are equivalent.

█ In analyzing the convenience of witnesses, the Court must look to the expenses of transportation and the length of time the witnesses will be absent from their jobs. In addition, this Court must consider not only the number of potential witnesses located in the transferor and transferee districts, but also the nature and quality of their testimony and whether they can be compelled to testify. *Delay & Daniels v. Campbell Co.,* 71 F.R.D. 368, 372 (D.S.C.1976); Wright, Law of Fed. Courts § 44.

Defendants have demonstrated that there exists a large number of witnesses who might testify for defendants at trial. Plaintiffs point out that there is some possibility that the testimony provided by these witnesses would be cumulative. Presumably, therefore, when faced with the expense of transporting these people to Chicago, defendants might choose to streamline their list of trial witnesses. Although this possibility exists, it is inappropriate for this Court, at this stage in the litigation, to speculate as to whether the testimony will in fact be cumulative or, if so, how defendants would prepare for trial if it were. Rather the Court must assume that, in light of the large list of potential witnesses, the possibility of prejudice to defendants is great.

With regard to the next factor to be considered, the nature and quality of trial testimony, the Court notes that the most important testimony in this case will very likely come from non-party witnesses. In this breach of contract action, the communications between the parties and non-parties is crucial to determine the cause of the delay in the contract's performance: whether the delay was caused by defendants knowingly taking more orders for the Minneapolis plant than it could accommodate or by plaintiff and its agent changing the windload specifications for the curtain wall.

█ In light of the crucial character of the non-party witnesses located in New York, this Court bases its order to transfer, in part, on the primary concern of insuring whenever possible the live presence of these material non-party witnesses. *Poncy v. Johnson & Johnson,* 414 F.Supp. 551, 558 (S.D.Fla.1976); 15 Wright & Miller, Fed. Prac. & Pro. § 3851. It is well settled that the trier of fact should not be forced to rely on deposition evidence when the deponent's live testimony can be procured. *Coats Co., Inc. v. Vulcan Equipment Co., Inc.,* 459 F.Supp. 654, 657 (N.D.Ill.1978); *Blender v. Sibley,* 396 F.Supp. 300, 302 (E.D.Pa.1975). Neither the transferor district nor the transferee district has process power over the nonparty witnesses located in Minneapolis (Flour City's former employees). Thus, the transfer of this action would have no effect on the power to compel the presence of these witnesses at trial. Additionally, although it is true that the transferee district has no process power by which to obtain the presence of plaintiff's non-party witnesses working in Chicago, those witnesses are plaintiff's affiliates and consult-

ants and "are not the type of witness . . . likely to be reluctant to testify." *Cunningham v. Cunningham*, 477 F.Supp. at 63. In contrast, defendants' non-party witnesses (the architects, construction and financial consultants employed in the construction of the entire hotel) might be reluctant to testify and their availability is necessary to a fair adjudication of this action. In light of the foregoing, and the fact that the former president and vice president of Flour City, as well as plaintiff's agent, Morse/Diesel, reside in the New York area, this Court concludes that considerations of potential problems of service weigh in favor of transfer.

### Interests of Justice

This Court concludes that the final factor to be considered under § 1404(a) supports transfer to the Southern District of New York. Under Illinois conflict of law principles, New York law will be applied to this action because New York is the place of the contract's making and performance. *P.S. & E., Inc. v. Selastomer Detroit, Inc.*, 470 F.2d 125, 127 (7th Cir. 1972), citing *Oakes v. Chicago Fire Brick Co.*, 388 Ill. 474, 58 N.E.2d 460 (1944). Additionally, the dispute over the changing windload specifications involves the New York City Building Code as enforced by the Port Authority of New York and New Jersey. These facts make transfer of the action appropriate. This is not because New York law is uncertain, novel or complex, but merely because issues of local law are best construed by courts most familiar with them. *Vaughn v. American Basketball Ass'n.*, 419 F.Supp. 1274, 1278 (S.D.N.Y.1977); *Kreisner v. Hilton Hotel Corp.*, 468 F.Supp. 176, 179 (E.D. N.Y.1979). *Color Technique, Inc. v. Don Wallace, Inc.*, 241 F.Supp. 952, 954 (N.D.Ill. 1965).

For the reasons stated above, defendants' motion for transfer is granted.

IT IS SO ORDERED.