**Gary RATNER, Dalia Ratner and All My Muffins, Inc., Plaintiffs,**

v.

**Steven HECHT and Alma Hecht, Defendants.**

**No. 84 C 10466.**

United States District Court, N.D. of Illinois, E.D.

Oct. 31, 1985.

Myron M. Cherry, Peter Flynn, Cherry & Flynn, Chicago, Ill., for plaintiffs.

Michael R. Turoff, Kurt J. Heinz, Arnstein, Gluck, Lehr, Barron & Milligan, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

Before the Court are defendants' motions, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2), to dismiss this case for lack of subject matter jurisdiction and for lack of personal jurisdiction, or in the alternative, to transfer this case, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Central District of California. For the reasons stated herein, defendants' motions to dismiss are denied, and the motion to transfer is granted.

## I. FACTS

This is an action for a declaratory judgment regarding the existence of a contract for services, and the value of services rendered. The action was brought by Gary and Dalia Ratner, Illinois residents, and All My Muffins, Inc. (AMM), a Delaware corporation, whose principal place of business is disputed. The defendants are Steven and Alma Hecht, California residents.

Plaintiffs' claim arises out of the defendants' contested ownership interest in AMM. The plaintiffs incorporated AMM in July 1983 for the purpose of selling muffins and other bakery goods through retail stores. Dalia Ratner is AMM's sole shareholder, President, and a director. Gary Ratner is AMM's Chairman. The Ratners initially contemplated that AMM would establish three retail stores—in California, Illinois, and New York. When the Ratners decided in 1984 to open AMM's first store, in Los Angeles, California, they enlisted the services of defendants Steven and Alma Hecht. The Hechts performed various services for AMM, both before and after the store opening in August 1984. The Hechts have asserted that, pursuant to an oral agreement, they are entitled to an ownership interest in AMM as compensation for their services.

The plaintiffs seek a declaration that no enforceable contract for the transfer of AMM stock exists between themselves and the defendants, and a declaration of the value of the services performed by defendant Steven Hecht. The defendants seek to dismiss this action for lack of subject matter and personal jurisdiction, or alternatively, to transfer the case to the United States District Court for the Central District of California.

## II. DISCUSSION

### A. *Subject Matter Jurisdiction*

Plaintiffs assert the jurisdiction of this Court based on diversity of citizenship. 28 U.S.C. § 1332. Defendants contend that AMM is a citizen of California, and therefore jurisdiction fails for lack of complete diversity. This Court finds that AMM is not a citizen of California. Thus, the parties to this controversy are completely diverse and subject matter jurisdiction is proper.

28 U.S.C. § 1332(c) provides that a corporation, for purposes of diversity jurisdiction, is a citizen of "any State by which it has been incorporated and of the State where it has its principal place of business." Since AMM is incorporated under the laws of Delaware, whether diversity of citizenship exists depends upon whether AMM has its principal place of business in California or in Illinois.

Plaintiffs contend that the appropriate test of AMM's principal place of business is the "nerve center" test. The nerve center test considers the following factors: the place where corporate decisions are made, where the corporation is funded, where its general counsel, directors, officers and shareholders are located, where the primary bank account exists, and the place of its principal office and corporate headquarters. In contrast, the defendants urge that a different test be used—the "place of operations" test. Defendants point to the site of AMM's only retail store, and emphasize the following factors: the location of AMM's tangible assets, the dis-

tribution of its employees and payroll, the allocation of gross income, and the situs of production and other physical activities.

■ In assessing the place of a corporation's principal place of business, no single factor or test is determinative. Although some courts have analyzed a corporation's principal place of business by reference to a "nerve center" or "place of operations" test, these tests are not necessarily conclusive. The tests merely characterize a location which, in certain circumstances, the balance of corporate activity has favored. The tests do not limit the inquiry to certain factors or activities to the exclusion of others. The determination of a corporation's principal place of business requires consideration of the corporation's entire scope of activity on a case-by-case basis.

■ AMM was incorporated in July 1983, opened its California retail store in August 1984, and filed this action in December 1984. For the first 13 months of its existence, AMM's principal and only place of business was in Illinois. In addition, AMM's headquarters, its only office, its sole shareholder, officers, directors, and assets are located in Illinois. All tax returns and corporate filings originate in Illinois, and the plans for AMM's multi-state bakery franchise were drawn up in Illinois. When in August 1984, AMM opened its first retail bakery store in California, AMM acquired a second place of business. In this location, AMM has its store lease, a small inventory, tangible equipment and fixtures, all of its employees, though few, and a small amount of cash in its operating bank accounts. The California store had operated for four months prior to the institution of this action. Considering the insubstantiality of the California operation, its short operative life, the amount of control and decision-making still exercised in Illinois, and the purpose of AMM which goes well beyond a single California store, the Court finds that AMM's principal place of business is Illinois.

## B. *Inter-District Transfer*

28 U.S.C. § 1404(a) governs change of venue and provides in pertinent part:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

■ In order to meet the requirements of § 1404(a), the movant must establish "(1) that venue is proper in the transferor district; (2) that the transferor court has the power to transfer the case (that is, that the transferee court is in a district 'where it might have been brought'); and (3) that the transfer is 'for the convenience of the parties and witnesses in the interest of justice.'" *Hotel Constructors, Inc. v. Seagrave Corp.*, 543 F.Supp. 1048, 1050 (N.D.Ill.1982). Requirements (1) and (2) are met in this case. Venue is proper in this, the transferor district, because this is the district in which all plaintiffs reside. *See* 28 U.S.C. § 1391(a). Moreover, this Court has the power to transfer the case. The United States District Court for the Central District of California has subject matter jurisdiction over the controversy based on diversity of citizenship. Venue is proper in that district because it is the district in which all defendants reside. *See* 28 U.S.C. § 1391(a).

■ The Court now turns to requirement (3). To support a motion to transfer, the movant must show a "clear balance of inconvenience" in this district over the transferee district. *Id. See also SEC v. First National Finance Corp.*, 392 F.Supp. 239, 240 (N.D.Ill.1975). In determining whether the movant has met this burden, the Court must accord weight to the plaintiffs' choice of forum, and consider the convenience of the parties, the convenience of the witnesses, and the interests of justice generally.

### 1. *Plaintiffs' Choice of Forum*

Although under the common law doctrine of *forum non conveniens* plaintiff's choice of forum was an overriding factor entitled to considerable weight, the significance of that choice has diminished since the enact-

ment of § 1404(a). *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955); *Hotel Constructors*, 543 F.Supp. at 1050. Additionally, plaintiff's choice of forum has reduced value where the forum lacks any significant contact with the underlying cause of action. *Environmental Services, Inc. v. Bell Lumber and Pole Co.*, 607 F.Supp. 851, 853 (N.D.Ill. 1984); *Cunningham v. Cunningham*, 477 F.Supp. 632, 634 (N.D.Ill.1979). In such a case, it becomes just one of many factors to be viewed by the Court when making its determination of convenience. *General Signal Corp. v. Western Electric Co.*, 362 F.Supp. 878, 880 (N.D.Ill.1973).

■ In the instant case, the plaintiffs' choice of an Illinois forum was based largely, if not exclusively, on the plaintiffs' own convenience rather than on any significant connection of the forum to the cause of action. The action seeks to resolve the existence and breach of an alleged contract for services, and absent the finding of such a contract, the value of services actually performed. The parties dispute the location of the conduct which underlies the action. The defendants contend that the contract was created in California, must be performed in California, and was breached in California. The plaintiffs, on the other hand, contend that all activity relative to the contract centers in Illinois. Because it cannot determine where the alleged contract was in fact to be performed, the court cannot conclusively find that the underlying cause of action arose in, or bears any significant relationship to, the plaintiffs' choice of forum. *Illiana Producers Fund 79, Ltd., et al. v. Huron Resources, Inc.*, No. 85 C 2182 (N.D.Ill. May 13, 1985) slip op. at 4. Accordingly, plaintiffs' choice of forum will be given equal consideration with the other factors which must be considered under § 1404.

## 2. *Convenience of the Parties and Witnesses*

Although § 1404(a) specifically prescribes consideration of the convenience of both parties and witnesses, in the instant case only the latter factor need be analyzed by the Court. The facts presented by this motion indicate that the parties will be equally inconvenienced, both physically and financially, if this action is brought in their adversaries' resident district. The Court will therefore consider the convenience of the parties as a neutral factor.

■ In analyzing the convenience of the witnesses, the Court must consider not only the number of potential witnesses located in the transferor and transferee districts, but also the nature and quality of their testimony and whether they can be compelled to testify. *Hotel Constructors*, 543 F.Supp. at 1051. In this action, the principal witnesses will testify to the circumstances surrounding the alleged creation of a contract, and to the conduct of the parties consistent or inconsistent with the contract. Most of these witnesses will be California residents. Witnesses will also testify about the services performed by the defendant Steven Hecht. These witnesses will also be California residents. Because a majority of the prospective principal witnesses reside in California, the convenience of witnesses favors the California forum.

The propriety of a transfer to California is further strengthened by the Court's interest in ensuring the live presence of material nonparty witnesses. It is well settled that the trier of fact should not be forced to rely on deposition evidence when the deponent's live testimony can be procured. *Coats Co., Inc. v. Vulcan Equipment Co., Inc.*, 459 F.Supp. 654, 657 (N.D.Ill.1978). Similarly, a litigant should not be forced to rely largely on deposition evidence when the deponent's live testimony can be procured. Most of the material nonparty witnesses in the instant case are California residents. Furthermore, the defendants' case rests almost entirely on the testimony of California witnesses. Unlike the transferee court, this Court has no subpoena power over these witnesses. A California forum would ensure the live testimony of material witnesses, and avoid prejudicing the defendants.

The plaintiffs forward the names of 12 witnesses who are material to the instant case and are not amenable to process in California. Two of these potential witnesses are plaintiffs' family members, and four are plaintiffs' past or present employees. The Court not only questions the materiality of the proposed testimony of these witnesses to the underlying cause of action, but notes that these witnesses are "not the type of witnesses ... likely to be reluctant to testify." *Cunningham v. Cunningham*, 477 F.Supp. at 634. Regarding the plaintiffs' other potential witnesses, two are New York residents, two are Washington, D.C. residents, and two are Montreal, Canada residents. Neither the California nor Illinois courts have subpoena power over these witnesses, and no facts before the Court suggest that they would be any more likely to testify in Illinois than in California. Overall, the live presence of a majority of nonparty witnesses, whose testimony is critical to this action, can be best ensured by trial in California.

### C. *Interests of Justice*

The final factor to be considered under § 1404(a), the interests of justice, supports transfer of this case to the Central District of California. Under Illinois conflict of law principles, if a contract is to be wholly performed in one jurisdiction, and the place of making and the place of performance differ, the law of the place of performance governs the construction and obligations of the contract. *P.S. & E. Inc. v. Selastomer Detroit, Inc.*, 470 F.2d 125, 127 (7th Cir.1972), *citing Oakes v. Chicago Fire Brick Co.*, 388 Ill. 474, 58 N.E.2d 460 (1944). The instant contract, whatever its precise terms, contemplates the defendants' performance of services in California and the plaintiffs' tendering of compensation to the defendants in California. Regardless of the jurisdiction in which the contract was created, performance will likely occur wholly in California. Therefore, California law will apply. This fact encourages transfer not because California law is uncertain, novel or complex, but merely because issues of local law are best construed by courts most familiar with them.

*Color Technique, Inc. v. Don Wallace, Inc.*, 241 F.Supp. 952, 954 (N.D.Ill.1965).

### III. PERSONAL JURISDICTION

The defendants ask that this action be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction. A finding of personal jurisdiction is not prerequisite to a grant of a § 1404(a) transfer. *Brown v. Grimm*, 483 F.Supp. 40 (N.D.Ill.1979). In light of the Court's grant of a transfer, the Court will not consider the personal jurisdiction question.

### IV. CONCLUSION

For the reasons stated above, defendants' motion to dismiss this action is denied, and defendants' motion to transfer this action to the United States District Court for the Central District of California is granted.

IT IS SO ORDERED.