**James C. KANZELBERGER and Contemporary, Inc., Plaintiffs-Appellees, Cross-Appellants,**

v.

**Warren F. KANZELBERGER and Geraldine G. Kanzelberger, Defendants-Appellants, Cross-Appellees,**

**and**

**William J. Deau, Defendant.**

**Nos. 85–2118, 85–2179.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 1986.

Decided Jan. 31, 1986.

---

Jeffrey B. Lieberman, Schuyler, Roche & Zwirner, Chicago, Ill., for defendants-appellants, cross-appellees.

Michael K. Brandwein, D'Ancona & Pflaum, Chicago, Ill., for plaintiffs-appellees, cross-appellants.

Before CUMMINGS, Chief Judge, and BAUER and POSNER, Circuit Judges.

POSNER, Circuit Judge.

This is a diversity suit for breach of contract. The only question we shall have to decide is whether there was, in fact, the required diversity of citizenship.

Contemporary, Inc., a closely held corporation that makes gift items, had three

shareholders: the brothers James and Warren Kanzelberger, each of whom owned 45 percent of the corporation's common stock, and William Deau, who owned 10 percent. James was the president and marketing director, Warren the executive vice-president and general manager, Deau the production manager. The brothers did not get along well, and in February 1983 the three shareholders agreed that the corporation would acquire from Warren Kanzelberger an option to buy his stock; when exercised, the option would give James control of the corporation. As part of the agreement, Warren resigned as an officer of the company, but he remained a director. James Kanzelberger and Deau were left in effective control, but they soon had a falling out, allegedly over James's dictatorial methods. In May, Deau agreed to sell his stock to Warren Kanzelberger, resigned as a director, and, pending completion of the sale of his stock, gave Warren his proxy. Warren, now in control of 55 percent of the company's stock, called a meeting of the shareholders for June 7. At this meeting he nominated, and caused to be elected, his wife Geraldine as the third director, in place of Deau; and the board then, by a vote of two to nothing (James not being in attendance), voted James Kanzelberger out of all of his offices and replaced him with Warren. James forthwith attempted to exercise the option for Contemporary to acquire Warren's stock, but Warren rebuffed him, taking the position that only Contemporary (which he now controlled) could decide whether the option would be exercised. On June 11 a directors' meeting was held at which the actions taken on June 7 were ratified by a two to nothing vote, with James abstaining.

This suit was brought on June 16 in an Illinois state court by James Kanzelberger and Contemporary, Inc. The complaint identified James as an Illinois citizen and Contemporary, which is incorporated in Illinois, as an Illinois corporation. The defendants named in the complaint, all citizens of Wisconsin, were Warren and Geraldine Kanzelberger and William Deau. On June 17 the defendants filed a petition in a federal district court in Illinois to remove the case from state to federal court. The petition alleged that Contemporary was incorporated in Illinois and had its principal place of business there. The plaintiffs did not move to remand the case to the state court, as they could have done if they had thought removal improper. See 28 U.S.C. § 1447(c). The case was tried and a judgment was rendered in favor of the plaintiffs, which among other things ordered specific performance of the option contract; the effect of compliance with this order would be to restore James to his position as president of Contemporary and indeed to give him control of the company. The defendants have appealed. The plaintiffs have cross-appealed, complaining that the judge should have given them additional damages.

At no point in this lawsuit has any party, or the district judge, questioned the existence of federal jurisdiction. But we did, at oral argument, and the helpful responses of counsel to our questions have enabled us to resolve the issue of jurisdiction without having to remand the case for further proceedings.

■■■ The only basis on which the defendants could have removed this case to federal court was that the parties were citizens of different states and the defendants were not citizens of the state where the suit was brought (Illinois). 28 U.S.C. §§ 1441(a), (b). The second requirement is satisfied but not the first. James Kanzelberger is a citizen of Illinois, and Warren and Geraldine Kanzelberger and William Deau are citizens of Wisconsin. The question concerns the other plaintiff, Contemporary, Inc. If on June 16 or June 17 it was a citizen of Wisconsin rather than Illinois, complete diversity of citizenship was lacking and the district court had no jurisdiction. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). (With an immaterial exception, the required diversity must exist both when the suit is filed—as the statute itself makes clear, see 28 U.S.C. § 1441(a)—and when it is removed, see 14A Wright, Miller & Cooper, Federal Practice

and Procedure § 3723, at pp. 312–14 (2d ed. 1985). But nothing relevant happened between June 16 and June 17.) A corporation is a citizen of any state in which it is incorporated and of the state in which it has its principal place of business. 28 U.S.C. § 1332(c). The removal petition alleged that Contemporary was both incorporated in and had its principal place of business in Illinois. Ordinarily when a jurisdictional allegation is proper in form and not denied, the district court is not obliged to inquire into its truth. *Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 530 (7th Cir.1985). But since federal jurisdiction cannot be conferred by consent of the parties, if the facts place the district court on notice that the jurisdictional allegation probably is false, the court is duty-bound to demand proof of its truth. Otherwise it is closing its eyes to an effort to confer jurisdiction collusively.

■ Even when there is no collusion (and we do not suggest that there was here), the federal courts are obliged to police the constitutional and statutory limitations on their jurisdiction. That is why, even at the appellate level, the court must satisfy itself that there is federal jurisdiction over the case. See, e.g., *Indiana Port Comm'n v. Bethlehem Steel Corp.*, 702 F.2d 107, 109 (7th Cir.1983); *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1297 (5th Cir.1985) (per curiam). In *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 555 (5th Cir.1985), the court of appeals raised the issue of jurisdiction on its own initiative, searched the record for evidence pertaining to the existence of diversity, found "a likely absence of complete diversity," and remanded for a factual determination on the question. In *Bialac v. Harsh Building Co.*, 463 F.2d 1185 (9th Cir.1972) (per curiam), the court ordered the case dismissed rather than remanded, because there was no doubt of the lack of jurisdiction. Although the parties had stipulated that one of the defendants had its principal place of business in Oregon, "the evidence showed that really the only business activity of [that defendant] is owning and operating the Phoenix [Arizona] apartment com-

plex which is the subject of this suit. Two of the plaintiffs are citizens of Arizona. Thus, we find at least one citizen of Arizona on each side of the case." *Id.* at 1186. The present case, as we shall see, is materially identical.

■ We do not suggest that the district court or this court must always or even often conduct an inquest on jurisdiction; but certainly if deficiencies in the pleadings, or facts brought out in pretrial discovery or at trial, fairly shriek that there is no federal jurisdiction, the district judge must conduct whatever supplementary factual proceedings are necessary to resolve the doubt. Here the probable absence of complete diversity should have been apparent by the third day after the case was removed, when the plaintiffs moved for a temporary restraining order.

■ In this circuit, a corporation's principal place of business is the place where the corporation has its nerve center. See *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986), and cases cited there; see generally 13B Wright, Miller & Cooper, Federal Practice and Procedure § 3625 (2d ed. 1984). Undisputed facts make clear that even before the *coup d'etat* of June 7, 1983, Contemporary's nerve center was in Wisconsin rather than in Illinois. Manitowoc, Wisconsin is where the corporation's single plant is located, where all the officers and employees except James Kanzelberger (and perhaps some salesmen) worked, where all orders were received and filled, where all correspondence was conducted, where all corporate records were kept. Although James, who was then the president of the company and who ran it apparently in rather a dictatorial fashion, lived in Illinois and worked mainly out of Contemporary's Chicago office, that office had a single employee, James, with not even a secretary to help him—with not even Chicago letterhead. Correspondence signed by James was typed, apparently in Manitowoc, on corporate letterhead that gives the address of the corporation and of all three of its divisions as Manitowoc. The case is like *Lugo-*

*Vina v. Pueblo Int'l, Inc.*, 574 F.2d 41, 43–44 (1st Cir.1978), where the court rejected the argument that the corporate defendant's principal place of business was where the chairman of its board had his office. See also *Horwat v. Paulsen-Webber Cordage Corp.*, 336 F.Supp. 1020 (W.D.Pa.1971); *Epstein v. Guilford Industries, Inc.*, 218 F.Supp. 286 (S.D.N.Y.1963).

But even if this is wrong and on June 6 the corporation's principal place of business was wherever James had his office, by June 16 when this suit was brought the corporation's principal place of business was in Wisconsin. For by then James was no longer an officer of Contemporary. The president was Warren, who works out of Manitowoc. Every other officer works in Wisconsin. The plant was there, as we have said. Not only the nerve center, but the body, was on that date in Wisconsin. Only a severed head was in Illinois.

The plaintiffs argue that because, as the district judge found, James was wrongfully dispossessed of his office, we should treat the case as if he had never ceased being the president of Contemporary. But the conclusion does not follow from the premise. Maybe James II was wrongfully dispossessed of his crown during the Glorious Revolution of 1688, but it does not follow that the seat of government followed James to Dublin and then to Paris. Our James was in exile from Contemporary from June 7 on. The suit was not filed till June 16. The plaintiffs asked for a preliminary injunction to restore James to office. When the district judge denied this request he did so in part on the ground that Warren was perfectly capable of running the company until the dispute over control was resolved. There was never any doubt who was running the company after June 7.

Moreover, James will not be heard to complain that Warren attempted to move the principal place of business of the company in order to hurt James. Warren and Geraldine did not try to prevent James from litigating this case in federal court by joining a party whose presence would eliminate complete diversity of citizenship. James did not bring suit in federal court. He defends federal jurisdiction now only because he won on the merits in federal court.

■ If Contemporary, Inc. were merely a nominal party, maybe we could dismiss it retroactively—even at this late date and without a motion to do so—on the authority of such cases as *Othman v. Globe Indemnity Co.*, 759 F.2d 1458, 1462–63 (9th Cir. 1985); *Ross v. International Brotherhood of Electrical Workers*, 634 F.2d 453, 456–57 (9th Cir.1980), and *Publicker Industries, Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1068–69 (3d Cir.1979); but cf. *Mansfield, Coldwater & Lake Michigan Ry. v. Swan*, 111 U.S. 379, 381–82, 4 S.Ct. 510, 511–12, 28 L.Ed. 462 (1884); *American Nat'l Bank & Trust Co. v. Bailey*, 750 F.2d 577, 585 (7th Cir.1984); *Denberg v. Railroad Retirement Bd.*, 696 F.2d 1193, 1197 (7th Cir.1983); *Illinois v. General Electric Co.*, 683 F.2d 206, 209 (7th Cir. 1982). The argument would be especially strong if the nominal party had been joined in order to defeat federal jurisdiction, which is not the case here; but in any event, and more fundamentally, Contemporary, Inc. was not a nominal party. Indeed, the district judge awarded it damages of several thousand dollars for a bonus that Warren had caused it to pay Geraldine and for other improper expenditures during the period of Warren's control. There is admittedly a question whether James was authorized to cause Contemporary to join this suit as a plaintiff, for when he did so he was no longer the president; and even if he had been, the suit might be deemed so extraordinary as to require approval of the board of directors—but since the directors were the defendants, their approval could not have been required. Perhaps the proper way to join Contemporary was to make it the plaintiff in a derivative suit, but this path was not taken.

We do not have to untie these knots. Whether or not it should have been allowed into the case, Contemporary was as we have said an active litigant and obtained damages. Moreover, its presence may have colored the outcome of James's suit. The corporation's presence side by side with James lent some additional credence to his claim that the defendants had

usurped control of the corporation—made the dispute seem less a squabble among the shareholders and more an effort by the defendants to despoil the corporation. Having enjoyed whatever trial advantage he got from joining the corporation with him, not to mention the indirect advantage that he derived from the judge's ordering the defendants to pay several thousand dollars to the corporation of which James is a major shareholder, James cannot now turn around and drop his coplaintiff retroactively in order to cure the jurisdictional defect and confirm his victory on the merits; and anyway he has made no attempt to do so.

We regret having to dismiss a proceeding which has been actively litigated for two and a half years, but there is no doubt that the case is not within the jurisdiction of the federal courts. The judgment must be reversed with directions to vacate all orders in the case and remand it to the state court from which it was removed. No costs in this court.

REVERSED WITH DIRECTIONS.