**Philip WOLIN, etc., Plaintiff,**

v.

**HANLEY DAWSON CADILLAC, INC., Defendant.**

No. 86 C 4483.

United States District Court, N.D. Illinois, E.D.

June 24, 1986.

Joel S. Ostrow, Chicago, for plaintiff.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Philip Wolin ("Wolin") has just sued Hanley Dawson Cadillac, Inc. ("Hanley Dawson"), seeking to ground this Court's jurisdiction over his individual and purported class claims in the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. For the reasons stated in this memorandum opinion and order, this action is dismissed sua sponte for lack of subject matter jurisdiction.

Wolin had the upsetting experience of taking his Cadillac to Hanley Dawson for repairs and having those repairs, though purportedly charged for at the rate of $53 an hour (Hanley Dawson's posted rate), actually charged in accordance with a manual based on the amount of time General Motors' Cadillac division considers such repairs *should* take (multiplied by the $53 rate)[1] rather than the time they *did* take in fact. That experience, with its resultant $609.50 labor bill, has produced a 28-page, six-count Complaint seeking relief not only for Wolin but for the whole class of similarly defrauded[2] Hanley Dawson service customers. Wolin's Complaint demonstrates at least two facts of life in an urban district court in a litigation-prone society:

1. Hell hath no fury like a Cadillac owner scorned.

2. RICO's lure of treble damages and attorneys' fees draws litigants and lawyers, as this Court observed in *Fields v. National Republic Bank of Chicago*, 546 F.Supp. 123, 124 (N.D.Ill.1982), like lemmings to the sea.

This Court will not pause to deal with the entire RICO analysis of Wolin's claim.[3] Suffice it to say the Complaint lacks the necessary factual allegations of actionable acts of "racketeering" and of a "pattern of racketeering activity"—each essential for RICO jurisdiction (for this Court's most recent published opinion in this area, see *Dunham v. Independence Bank of Chicago*, 629 F.Supp. 983 (N.D.Ill. 1986), which cites to an entire series of earlier opinions shaping the definition of "pattern"[4]).

Wolin alleges he made two telephone calls during the course of his transaction with Hanley Dawson, one on the morning of June 20, 1985[5] and the other that afternoon. When he first called Wolin was told the car wasn't yet ready; then that after-

1. Again our modern society manifests itself: Those manual-listed charges are programmed into the Hanley Dawson computer, so the bill is automatically generated on a predetermined basis rather than reflecting what really took place.

2. No opinion is expressed here as to whether Wolin is right in characterizing Hanley Dawson's practice as a scheme to defraud. This memorandum opinion and order simply accepts, for current purposes, both Wolin's factual allegations and his characterization of Hanley Dawson's conduct as fraudulent.

3. This opinion therefore should not be viewed as having passed on the validity of Wolin's claim in other respects.

4. Since *Dunham* was issued, the Court of Appeals for the Eighth Circuit has specifically adopted this Court's analysis of the "pattern of racketeering" requirement in *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, 615 F.Supp. 828, 832 (N.D.Ill.1985). *Superior Oil Co. v. Fulmer*, 785 F.2d 252, 257 (8th Cir.1986).

5. Yes, it has taken a full year of stewing over this grievance for Wolin and his lawyer to produce the current Complaint. Horace thus remains topical even two millenia later (*Ars Poetica*, line 168):

   Parturient montes, nascetur ridiculus mus (charitably translated in Bartlett's *Familiar Quotations* as "The lab'ring mountain scarce brings forth a mouse").

noon he was told the work had been done. Each of Wolin's other contacts with Hanley Dawson—leaving the car for repairs in the first place and picking it up later (when he learned of the billing practice in a conversation with Hanley Dawson's employee)—was face-to-face.

Those two telephone conversations don't meet even the minimal requirements for wire fraud, for their totally incidental connection to the complained-of scheme [6] cannot suffice as having "furthered the scheme." *Dunham*, 629 F.Supp. at 987–89; see *United States v. Murphy*, 768 F.2d 1518, 1530 (7th Cir.1985). Even if they had surmounted *that* hurdle, the two telephone conversations do not establish the necessary "pattern." *Dunham*, 629 F.Supp. at 989–90 and cases cited. Finally, given the non-scheme-facilitative nature of the telephone calls, Wolin cannot rely on Hanley Dawson's having charged *other* customers (the putative class members) to satisfy the "pattern" requirement, as this Court found appropriate in *Papagiannis v. Pontikis*, 108 F.R.D. 177, 179 (N.D.Ill.1985).

This is the kind of RICO complaint that lends fuel to the fire of those who would seek legislative emasculation of the statute. It trivializes a cause of action that Congress created for a legitimate social purpose. Both Wolin (himself a lawyer with at least some federal practice, as this Court has seen from cases on its calendar in which Wolin has filed his appearance) and his lawyer should know better. This action is dismissed for lack of subject matter jurisdiction.[7]

6. See n. 2.

7. This Court of course recognizes and follows the general admonition of our Court of Appeals against sua sponte dismissals without counsel's having had an opportunity to speak to the legal issues. *Doe v. St. Joseph's Hospital of Fort Wayne*, 788 F.2d 411, 414–16 (7th Cir.1986). But this Court is also mindful of the repeated urgings from the Court of Appeals that district court judges must at the first opportunity review the jurisdictional basis for each action assigned to their respective calendars. *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 776–77 (7th Cir.

1986) ("deficiencies in the pleadings ... fairly shriek that there is no federal jurisdiction"). As a matter of practice this Court reviews every newly-filed complaint immediately. Where the jurisdictional flaw is as glaring as here, both lawyer and client are spared the risk of Rule 11 sanctions by the entry of a threshold dismissal before defense counsel has been forced to work on the matter: Rule 11 does not reimburse judges for *their* waste of time in disposing of wholly groundless (that is, federally groundless) claims.