**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Petitioner,**

v.

**INTERSTATE COMMERCE COMMISSION, United States of America, and Chicago and North Western Transportation Company, Respondents.**

No. 87–2031.

United States Court of Appeals, Seventh Circuit.

Submitted Sept. 10, 1987.
Decided Oct. 19, 1987.

Michael S. Wolly, Mulholland & Hickey, Washington, D.C., for petitioner.

John J. Powers, III, Dept. of Justice, Washington, D.C., for respondents.

Robert J. Wiggers, Christopher A. Mills, Chicago & North Western Transp., Co., Stuart F. Gassner, Chicago, Ill., for intervenors.

Before FLAUM, EASTERBROOK and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

A petition to review an order of the Interstate Commerce Commission may be filed in "the judicial circuit in which the petitioner resides or has its principal office, or in the United States Court of Appeals for the District of Columbia Circuit." 28 U.S.C. § 2343. The International Brotherhood of Electrical Workers (IBEW), the petitioner, is an unincorporated association with its headquarters in the District of Columbia. Because treating the association as residing wherever any member can be found would create excessive opportunities for forum-shopping, see *American Civil Liberties Union v. FCC*, 774 F.2d 24, 26 (1st Cir.1985), it seems to follow that the IBEW may obtain review only in the D.C. Circuit. We have been asked to transfer the IBEW's petition to that court.

The IBEW defends its choice of venue on two grounds: (1) its Tenth District, with headquarters in Rosemont, Illinois, comprises "all members of the IBEW who work in the railroad industry, regardless of geographic locale" (affidavit of E.P. McEntee, Vice–President for the Tenth District) and handles all litigation concerning railroads; (2) the Seventh Circuit is convenient for both the IBEW and the railroad in question, the Chicago & North Western. The second ground is a make-weight. The statute incorporates considerations of the petitioner's convenience up to a point (residence and headquarters are related to convenience), but the location of the railroad respondent's headquarters is not part of the statutory formula. The Chicago & North Western intervened; the only statutory respondents are the ICC and the United States, conveniently found in the District of Columbia.

The statute disposes of the first ground as well. The reference to the "principal office" of the petitioner assumes that each petitioner has but one "principal" office. This language parallels "principal place of business" in 28 U.S.C. § 1332(c), defining a corporation's citizenship for purposes of the diversity jurisdiction. We have read this as a reference to a corporation's headquarters, its "nerve center". E.g., *Kanzelberger v. Kanzelberger*, 782 F.2d 774 (7th Cir.1986). Section 2343 designates even more clearly the headquarters of the firm. As no firm is the Hydra for purposes of § 1332(c), so no firm has more than one "principal" office. That the rail interests of the IBEW are concentrated in Illinois is a detail. Many corporations have divisional structures, with the headquarters of the Widget Division on one coast and the corporate headquarters on another. In a suit dealing with the corporation's widgets, the corporate headquarters is still its "principal place of business". Cf. *Dimmit & Owens Financial, Inc. v. United States*, 787 F.2d 1186 (7th Cir.1986) (under a tax statute dealing with "principal executive office").

Section 2343 was adopted in 1950 as part of a package of changes in judicial review of administrative decisions. 64 Stat. 1130 (1950), slightly revised and renumbered, 80 Stat. 622 (1966). The legislative history does not discuss the language in question, so the IBEW derives no support from this source. See H.R.Rep. 2122, 81st Cong., 2d Sess. (1950); S.Rep. 2618, 81st Cong., 2d Sess. (1950). And practical considerations reinforce a straightforward reading of the statute. Where are the IBEW's headquarters for employees in the trucking business? The barge business? The ICC regulates all three, and § 2343 applies to many more agencies. Does the IBEW have three (or more) "principal office[s]" for purposes of § 2343? What are we to do when the ICC moves to transfer a case out of our circuit on the ground that the petitioner's division located in San Francisco really has more to do with rail matters than its headquarters in Indianapolis? And what will happen when, as is surely the case with many unions and corporations, the regional office is not devoted entirely to a single industry—if the Tenth District had 80% of the IBEW's rail work-

ers (and some of its construction workers), while other rail workers were scattered across the country? The chief and often only virtue of a jurisdictional rule is certainty. The statute allocates cases among courts, and a mechanical assignment allows everyone to address the merits more quickly. Courts and litigants can tell at a glance where IBEW's headquarters are; a rule that made the right location of the suit turn on the specialties of a litigant's regional offices could lead to extended wrangling. We are not willing to jettison the advantages of a mechanical implementation of § 2343.

This case is transferred to the District of Columbia Circuit. See *Alexander v. CIR*, 825 F.2d 499 (D.C.Cir.1987) (explaining why 28 U.S.C. § 1631 does not curtail, by negative implication, the power to transfer a case to the appropriate venue).