**CHAMBERLAIN MANUFACTURING CORPORATION, an Iowa corporation, Plaintiff,**

**v.**

**MAREMONT CORPORATION, a Delaware corporation, and Arvin Industries, Inc., an Indiana corporation, Defendants.**

No. 92 C 0356.

United States District Court, N.D. Illinois, E.D.

Aug. 13, 1993.

---

Andrew R. Laidlaw, Debra Ann Winiarski, Timothy J. Haley, Edward James Santiago, Daniel Michael Blouin, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for plaintiff.

Michael B. Nash, Michael B. Nash, P.C., Chicago, IL, Charles R. Donnenfeld, Earl J. Silbert, Ellen Kabcenell Wayne, Adam S. Hoffinger, Robert A. Salerno, James T. Phalen, Jeffrey A. Tomasevich, Schwalb, Donnenfeld, Bray & Silbert, Washington, DC, for defendants.

## *MEMORANDUM OPINION AND ORDER*

ALESIA, District Judge.

Before the court is Magistrate Judge Guzman's Report and Recommendation dated February 5, 1993 on the motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) filed by defendant Maremont Corporation ("Maremont") and defendant Arvin Industries, Inc. ("Arvin"), Maremont's parent corporation. The Magistrate Judge recommends granting defendants' motion to dismiss because he concluded that the principal place of business of defendant Maremont is Carol Stream, Illinois, as Maremont asserts, and this conclusion destroys diversity jurisdiction. Plaintiff Chamberlain Manufacturing Corporation ("Chamberlain") objects to this recommendation. Therefore, the court will conduct *de novo* review of those portions of the Report and Recommendation to which plaintiff objects. 28 U.S.C. § 636.

■ Both parties agree that the Seventh Circuit has unequivocally adopted the "nerve center" test to determine where a corporation has its principal place of business for purposes of jurisdiction based on diversity of citizenship. *Wisconsin Knife Works v. National Metal Crafters,* 781 F.2d 1280, 1282 (7th Cir.1986). However, the parties disagree as to what factors should be considered in determining the location of a corporation's nerve center.

The Magistrate Judge enumerated ten factors that he considered relevant to the "nerve center" determination: (1) the location of the general offices; (2) the residence of officers and department heads; (3) where management decisions are made; (4) where income tax returns are filed; (5) the location of the records and audits; (6) where credit card and collection matters are handled; (7)

the location of the principal bank account; (8) the location of the board of directors' meetings; (9) where all orders are received and filled; and (10) where all correspondence is conducted. Report and Recommendation, at 4 (citing *Sabo v. Standard Oil Co.*, 295 F.2d 893, 894 (7th Cir.1961); *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986)).

Plaintiff argues that the Magistrate Judge considered factors irrelevant to the determination of where a corporation's "nerve center" is located and should have limited the inquiry to four factors: (1) where important corporate decisions are made; (2) where the corporations's general counsel, directors, officers and shareholders are located; (3) where the corporation is funded and where the corporation's primary bank account exists; and (4) where its corporate headquarters are located. Plaintiff's Objections, at 1 (citing *Ratner v. Hecht*, 621 F.Supp. 378, 380 (N.D.Ill. 1985)). Thus, plaintiff submits that the Magistrate Judge concentrated on factors which are irrelevant under the "nerve center" test. Plaintiff's Objections, at 2.

Specifically, plaintiff asserts that the Magistrate Judge should not have taken into account where tax returns are filed, where Maremont's records and audits are kept, where Maremont's credit card and collection matters are handled, where Maremont's orders are received and filled, and where Maremont's correspondence is conducted. Plaintiff's Objections, at 2. Plaintiff suggests that these considerations might be proper under the "place of operations" or "center of corporate activity" tests for determining a corporation's place of business but not under the "nerve center" test adopted in the Seventh Circuit. Plaintiff's Objections, at 2–3. Furthermore, plaintiff argues that the Magistrate Judge misconstrued both *Sabo* and *Kanzelberger* because rather than setting forth only "nerve center" factors, the court in each of those cases also described in *dicta* some of the operational activities that the corporation carried out in the pertinent state. *Sabo*, 295 F.2d at 893–94; *Kanzelberger*, 782 F.2d at 777. Thus, plaintiff argues that the court in *Kanzelberger* did not hold that operational activities were to be analyzed under the "nerve center" test. Rather, plaintiff points out, the *Kanzelberger* court explained its discussion of "extraneous" factors by stating that "not only the nerve center, but the body" of this corporation was in the state determined to be the principal place of business. *Id.* at 778. Therefore, the court must determine what factors may be considered under the "nerve center" analysis and whether the Magistrate Judge properly evaluated the applicable factors to determine Maremont's principal place of business.

In *Wisconsin Knife*, where the Seventh Circuit explicitly adopted the "nerve center" test, the court noted that some courts use a more vague standard whereby "[t]hey look not just to where the corporation has its headquarters but also to the distribution of the corporation's assets and employees." *Wisconsin Knife*, 781 F.2d at 1282. In contrast, the Seventh Circuit adopted a simpler test because "[j]urisdiction ought to be readily determinable." *Id.* However, the court also noted that "[t]here are cases where the corporation's headquarters may be divided between states and cases where the nominal headquarters isn't really the directing intelligence of the corporation, and those cases could give trouble even under a simple "nerve center" test." *Id.* at 1282–83. Beyond these broad statements, *Wisconsin Knife* provides little guidance in close cases.

The parties have cited and the court knows of no case that enumerates exclusive factors to consider when applying the "nerve center" test. As defendants point out, the *Ratner* court stated that "[t]he tests do not limit the inquiry to certain factors or activities to the exclusion of others." *Ratner*, 621 F.Supp. at 381. However, as plaintiff points out, in *Ratner* the court also found that no single test is determinative, a concept rejected in *Wisconsin Knife*, where the Seventh Circuit held that the "nerve center" test must be applied in all cases. Thus, there exists no clear precedent as to whether the "nerve center" test requires the court to consider only certain limited factors.

Certain considerations warrant the limiting of factors to be taken into account under the "nerve center" test. First, as previously stated, the Seventh Circuit, in *Wisconsin*

*Knife,* selected the "nerve center" test over other alternative tests because it is simpler and "[j]urisdiction ought to be readily determinable." *Wisconsin Knife,* 781 F.2d at 1282. Certainly, the consideration of fewer factors would simplify the process of determining a corporation's principal place of business. Second, if any and all otherwise relevant factors could be considered, there would be no logical explanation for the Seventh Circuit to have selected a particular test. For example, the Seventh Circuit did not opt for the "center of corporate activity" test, which looks to where the corporation's day-to-day management takes place, or the "locus of the operations of the corporation" test, focusing on where the bulk of the corporation's actual physical operations are located. *See, e.g., Topp v. Compair, Inc.,* 814 F.2d 830, 834 (1st Cir.1987). These considerations warrant that the factors of the "nerve center" test be limited.

The precise factors for that test, however, are less than clear. The court will apply the "nerve center" test in light of the significance of the Seventh Circuit having chosen one test rather than other alternative tests, the goal of making jurisdiction readily determinable and what the court can glean from *Wisconsin Knife.* *Wisconsin Knife* indicates that the court should look for the corporation's brain and will ordinarily find it where the corporation has its headquarters. *Wisconsin Knife,* 781 F.2d at 1282. Hence, this court concludes that any factors involving, to continue the metaphor, any part of the body other than the brain are irrelevant to this test. Accordingly, the court agrees with plaintiff that only the factors which deal with the brains of the organization should be considered for the "nerve center" test and factors dealing with "day-to-day operating responsibilities" of Maremont should be disregarded. For example, *Wisconsin Knife* criticized courts that use more vague standards whereby they look to the distribution of the corporation's assets and employees. 781 F.2d at 1282. Therefore, these factors will not be considered. The court will look to the "nerve center" factors set forth in *Ratner* because they tend to distinguish the brain from other parts of the corporation's body—vital organs though they may be—whereas other factors do not help differentiate among numerous states where the corporation has a presence.

■ Plaintiff argues that all of the "nerve center" factors set forth in *Ratner* point to Maremont being principally based in Indiana. First, at the time this action was filed, all of Maremont's directors and seven out of ten of Maremont's officers resided in Indiana. Maremont's CEO, CFO, Treasurer, Assistant Treasurer, Secretary, Human Resources Vice–President and General Counsel all worked in Indiana. *See* Defendant Maremont Corporation's Responses to Plaintiff's Second Set of Interrogatories, Response to Interrogatory No. 56. Thus, Maremont's highest ranking officers maintain offices in Indiana. Second, plaintiff argues that because Maremont's highest level officers and all of its directors reside in Indiana, major corporate decisions, including board decisions by unanimous consent which are signed in Indiana, are undertaken there. Because the officers and directors do not meet in Indiana, the court notes the fact that Maremont's corporate minute books are kept at Arvin in Indiana as pertinent to the determination of where major corporate decisions are made. In addition, the court notes that, according to the deposition of Harold K. Kroeger, Assistant Treasurer and Assistant Secretary of Maremont, Maremont's CEO, Byron Pond, who resides and works in Indiana, has the power to fire the important Maremont employees (Tr. 299–300) and must approve any Maremont contracts involving "significant expenditures." (Tr. 165). Third, all of Maremont's bank accounts are funded by Arvin and all of Maremont's cash receipts are commingled in Arvin's accounts in Indiana (Tr. 30) at the close of business every day. In fact, the Magistrate Judge found Maremont's principal bank account to be located in Indiana. R & R, at 11. Maremont maintains only petty cash and impressed accounts (accounts with a low, fixed balance) in Illinois. Finally, the plaintiff objects to the Magistrate Judge's conclusion that Maremont has no office in Indiana. To the contrary, plaintiff asserts that "Maremont's executive headquarters are in Indiana and that is the location from which it is controlled." Memorandum in Support of Plaintiff's Objec-

tions to Report and Recommendation, at 8. Plaintiff submits that all of the factors relevant to the "nerve center" approach point to Indiana as Maremont's principal place of business.

Defendant Maremont argues that it has no "operations" in Indiana and, therefore, under the "nerve center" test, it could not possibly have its principal place of business there. Chamberlain contends that Maremont's argument is flawed as it is premised on the erroneous assumption that the intent of the "nerve center" test is to locate a corporation's principal place of business in one of the states where it has operations. To the contrary, Chamberlain argues that precisely because Maremont admittedly has "operations" in many states, this court must look to where the majority of officers and directors reside and conduct the overall management of the company.

Maremont's argument does not fall on deaf ears. Consistent with the purpose of creating diversity jurisdiction to allow a neutral federal forum for disputes between citizens of different states, Congress implemented the principal place of business inquiry to preclude a local corporation from suing, or being sued by, a local citizen in federal court simply because it had been incorporated in another state. 1 *Moore's Federal Practice,* ¶ 0.77(3–4) at 800.116. Therefore, to determine "whether the entity corporation is so closely tied to a particular state that it should not be permitted to sue (or be sued by) a citizen in federal court," the court agrees with the theory underlying Maremont's proposed "operations" requirement that the place "where a corporation predominantly goes about its daily business—buying, selling, manufacturing, hiring, firing, entering contracts, participating in local trade associations—is more likely to be the place where it is part of the community (and thus free from local bias) than the situs of the board of directors or other meetings setting broad corporate policy." *Id.* at 800.117. Maremont states and the court agrees that the "nerve center" test is necessary and most helpful when the focus of the activities of a corporation fails to indicate a predominate state or one "principal place of business."

Nonetheless, as the court has repeatedly stated, the Seventh Circuit has adopted the "nerve center" test as its universal method of determining principal place of business. There is no requirement that the "nerve center" be located where the corporation has operations. In fact, in *Sabo v. Standard Oil Co.,* 295 F.2d 893 (7th Cir.1961), the Seventh Circuit cited as examples of how to ascertain a corporation's principal place of business two cases where other courts had held that the principal place of business was where the executive offices were located rather than the situs of the corporation's operations. *Id.* at 894 (citing *Burdick v. Dillon,* 144 F. 737 (1st Cir.1906) (Massachusetts was principal place of business for a New Jersey corporation whose operations were carried on in New York and Vermont but whose executive offices were in Massachusetts) and *Scot Typewriter Co. v. Underwood Corp.,* 170 F.Supp. 862 (D.N.Y.1959) (holding corporation's principal place of business was New York where its executive offices were located rather than Connecticut, the situs of its largest plant as well as of research and operational activities)). In *Sabo,* the Seventh Circuit held that the defendant's principal place of business was in Illinois, where defendant's general offices were located, officers and department heads resided and carried out the management of the company, corporate income tax returns were filed, company records and audits were kept, collection matters were handled, the principal bank account was located and the board of directors' meetings were held. *Sabo,* 295 F.2d at 893–894. Which of these factors were essential to the court's holding is unclear. But neither *Sabo* nor any other case this court has found indicates that a corporation must have operations at the location of its principal place of business. Therefore, the court cannot draft a new rule making the presence of operations a prerequisite to a finding of a corporation's principal place of business.

Thus, the court holds that Maremont's headquarters are in Indiana where almost all of Maremont's directors and officers reside, Maremont's principal bank account is located, and Maremont's major corporate deci-

sions are undertaken. Because the location of Maremont's "headquarters" is a disputed issue, the court must rely more heavily on other "nerve center" factors. Defendants argue that the court should discount these factors. In *Poole v. Alpha Therapeutic Corp.*, No. 86 C 7623, 1991 WL 61001, 1991 U.S.Dist. LEXIS 4928 (N.D.Ill. April 10, 1991), the plaintiffs asked the court to disregard the location of the corporation's directors, officers, principal bank accounts, and corporate headquarters and speculate as to the internal power bases within the corporation and its parent. *Id.*, 1991 WL 61001 at *2, 1991 U.S.Dist. LEXIS 4928 at *3. The *Poole* court found that such an inquiry goes beyond the "simple test" envisioned by the Seventh Circuit. *Id.* Similarly, in the instant case, the hundreds of pages of discovery and briefing on this issue extols the Seventh Circuit's selection of the "nerve center" test, which should be a more straightforward inquiry.

The court does not hold that Arvin's principal place of business should be imputed to Maremont under an alter ego theory because the court finds that Maremont has maintained its own separate corporate identity. However, the court agrees with plaintiff that Maremont cannot hide behind the fact that its officers and directors who work and reside in Indiana also happen to be officers of its parent company, Arvin. Although Arvin's principal place of business is not imputed to Maremont *per se*, the court agrees with the finding in *Beightol v. Capitol Bankers Life Insurance Co.*, 730 F.Supp. 190, 194 (E.D.Wis.1990), that the Seventh Circuit's "nerve center" analysis and the alter ego doctrine essentially produce identical outcomes.

For the foregoing reasons, the court declines to adopt Magistrate Judge Guzman's Report and Recommendation. Accordingly, the court denies defendants' motion to dismiss for lack of subject matter jurisdiction.