**LeAnn J. HANNA, Plaintiff,**

v.

**FLEETGUARD, INC., and Liberty Mutual Insurance Group, a/k/a Liberty Mutual Insurance Group/Boston, Defendants.**

**No. C 95–3020.**

United States District Court, N.D. Iowa, Central Division.

Aug. 23, 1995.

and hence the investment is certainly recoverable.

Mark S. Soldat, Algona, Iowa, for Plaintiff.

Thomas J. Bice of Johnson, Erb, Bice & Carlson, P.C., Fort Dodge, Iowa, for Defendant Fleetguard, Inc.

Iris J. Post of Grefe & Sidney, P.L.C., Des Moines, Iowa, for Defendant Liberty Mutual Insurance Group.

## MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION TO REMAND

BENNETT, District Judge.

TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ............................... 1114

II. LEGAL ANALYSIS ....................................... 1115
 A. 28 U.S.C. § 1445(c) ............................................1116
 1. Historical background and procedural application of the statute ......1116
 a. Historical background ........................................1116
 b. Procedural application........................................1117

2. *Introduction to the Humphrey/Spearman analysis* ................... 1118
3. *Hanna's claim of retaliatory discharge* ............................ 1119
4. *Hanna's claim of bad faith* ...................................... 1123
B. *The Existence Of Diversity Between Hanna and Fleetguard* .............. 1126
1. *Tests to determine principal place of business* ...................... 1127
2. *Fleetguard's principal place of business* ........................... 1128

III. *CONCLUSION* ................................................... 1129

In the often esoteric procedural battlefield of removal-remand skirmishes, this litigation presents a rather arcane confrontation between traditional state law workers' compensation issues and federal court removal jurisdiction. One side of the battleground represents one of the traditional bases of federal jurisdiction, diversity of citizenship of the parties. The other side, however, symbolizes the important principles of comity and sovereignty, prescribing the locality of workers' compensation claims and remanding them well beyond the reach of the federal courts. This epitome of comity and sovereignty is 28 U.S.C. § 1445(c), the statute prohibiting the removal of civil actions "arising under" the workers' compensation laws. The question squarely raised here involves the parameters of this prohibition on federal court removal jurisdiction. Specifically, this motion to remand compels the court to examine the propriety of removal of two state tort claims, sisters to an underlying workers' compensation claim, in light of an express congressional limitation on this area of federal jurisdiction. Placing this procedural quandary in its appropriate context, this court has recently recognized that an initial removal-remand struggle has absolutely nothing to do with the essence of the actual dispute between the parties, but simply decides the location (state or federal) of the battleground. *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. 990C80656 v. Amoco Oil Co.,* 883 F.Supp. 403, 405 (N.D.Iowa 1995) (quoting *University of Rhode Island v. A.W. Chesterton Co.,* 2 F.3d 1200, 1219 (1st Cir.1993) (Hornby, J., concurring)).

Regarding this motion, plaintiff employee originally filed suit in an Iowa state court alleging retaliatory discharge and bad faith failure to pay workers' compensation benefits against both her former employer and her employer's workers' compensation insurer,

named co-defendants in this action. Defendants filed notice of removal to this court on grounds of diversity. In response, plaintiff has moved to remand the case back to state court pursuant to 28 U.S.C. § 1445(c), arguing this statute prohibited the removal of both the retaliatory discharge claim and the bad faith claim because they were "civil actions arising out of workers' compensation laws." Plaintiff has also challenged defendants' removal on the grounds that the parties' citizenship is not diverse.

## I. INTRODUCTION AND BACKGROUND

Plaintiff LeAnn Hanna filed this lawsuit against Defendants Fleetguard, Inc. ("Fleetguard") and Liberty Mutual Insurance Co., a/k/a Liberty Mutual Insurance Group/Boston ("Liberty Mutual") in the Iowa District Court in Winnebago County on February 7, 1995. In Count One of her Petition, Hanna claims she sustained workers' compensation injuries while employed by Fleetguard, and Liberty Mutual insured Fleetguard for her injuries. (Pl.'s Pet. ¶ 1-2). Hanna claims Liberty Mutual acted in bad faith with respect to allowing her workers' compensation benefits for her injuries by delaying payment of such benefits and that Fleetguard participated in the denial of payment of such benefits by concert of action. (Pl.'s Pet. ¶ 3). In Count Two of her Petition, Hanna asserts a claim of retaliatory discharge against Fleetguard, alleging she was discharged from employment in response to and as a result of making workers' compensation claims for the injuries she sustained while employed by Fleetguard. (Pl.'s Pet. ¶ 10). Hanna further alleged that Liberty Mutual participated in this retaliatory discharge by concert of action. (Pl.'s Pet. ¶ 10). Both Fleetguard and Liberty Mutual denied the material allegations of the charges of retaliatory discharge and bad faith denial of workers' compensa-

tion benefits in separate answers dated February 24, 1995, and March 7, 1995, respectively.

On March 13, 1995, Fleetguard and Liberty Mutual filed a Notice of Removal in the United States District Court for the Northern District of Iowa pursuant to 28 U.S.C. § 1441(a), alleging the federal district court had original jurisdiction over these two claims pursuant to 28 U.S.C. § 1332(a) due to the diversity of the adverse parties in this lawsuit. In their Notice of Removal, Fleetguard and Liberty Mutual claimed Hanna is a resident of Iowa, Fleetguard is a corporation incorporated in Indiana with its principal place of business in Nashville, Tennessee, and Liberty Mutual is a corporation incorporated in Massachusetts with its principal place of business in Boston, Massachusetts. This case was referred to United States Magistrate Judge John A. Jarvey on March 14, 1995, pursuant to 28 U.S.C. § 636(b)(1)(A) & (B), who was scheduled to hear and determine any and all pretrial matters regarding this case including dispositive motions.

On March 27, 1995, Hanna filed a Motion to Remand to state court, alleging three grounds for the remand. First, Hanna asserts that her retaliatory discharge claim against Fleetguard and Liberty Mutual is a claim arising under Iowa Code § 85.18, a statute which is part of Iowa's workers' compensation law. 28 U.S.C. § 1445(c) precludes removal of any civil action in state court arising under the workers' compensation laws of such state. Therefore, Hanna argues this retaliatory discharge claim cannot be removed to federal court. Secondly, Hanna alleges that her bad faith claim against Fleetguard and Liberty Mutual is a claim arising under Iowa Code § 85.27, a statute which is also a part of Iowa's workers' compensation law. In accordance with the statutory mandate of 28 U.S.C. § 1445(c), Hanna argues this bad faith claim cannot be removed to federal court. Finally, Hanna contends complete diversity does not exist between the adverse parties in this case because Hanna is a resident of Iowa, and Fleetguard's principal place of business or "nerve center" is in Iowa, making Fleetguard a citizen of Iowa

under 28 U.S.C. § 1332(c)(1). (Pl.'s Mot. to Remand ¶ 6). Based on these grounds, Hanna is seeking a remand of this case to the Iowa District Court.

Fleetguard and Liberty Mutual each filed a separate Resistance to Hanna's Motion to Remand on April 10, 1995. Both parties argued Hanna's claims of retaliatory discharge and bad faith did not arise under Iowa's workers' compensation laws and as such, should not be remanded pursuant to 28 U.S.C. § 1445(c). In addition, both Fleetguard and Liberty Mutual argued that Fleetguard's principal place of business is in Nashville, Tennessee, not in Iowa; therefore, the adverse parties are completely diverse pursuant to 28 U.S.C. § 1332(c)(1), and this case has been properly removed to federal court pursuant to 28 U.S.C. § 1441(a). Accompanying its Resistance to Hanna's Motion to Remand and its corresponding brief, Fleetguard filed an affidavit by its Secretary, Mark R. Gerstle, regarding the location of Fleetguard's corporate activities for purposes of supporting its claim of diversity between Hanna and Fleetguard. On August 8, 1995, I issued an order withdrawing the referral of this motion to Judge John A. Jarvey and reassigning the motion to me. Before examining the merits of this controversy, the court turns first to the historical background and the procedural principles that accompany 28 U.S.C. § 1445(c), the statutory provision at issue in this case.

## II. LEGAL ANALYSIS

■ A primary principle of removal jurisdiction is that defendants may initiate removal to the federal district court for the district in which the state court action is pending, if the federal court has original jurisdiction, unless an Act of Congress expressly provides otherwise. *Humphrey v. Sequentia, Inc.*, 58 F.3d 1238, 1242 (8th Cir.1995) (citing 28 U.S.C. § 1441(a)). In this case, Fleetguard and Liberty Mutual removed Hanna's state court action to federal district court on the grounds that the parties' citizenship was diverse pursuant to 28 U.S.C. § 1332(a). In her motion for remand, Hanna argues that removal of Hanna's retaliatory discharge and bad faith claims was expressly prohibited by

28 U.S.C. § 1445(c). In addition, Hanna alleges that diversity of citizenship does not exist between the parties, thereby defeating federal jurisdiction.

### A. 28 U.S.C. § 1445(c)

Congress passed section 1445(c) in 1958, which provides, "A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." 28 U.S.C. § 1445(c). The issue before this court is whether Hanna's claims of retaliatory discharge and bad faith "arise under" Iowa's workers' compensation laws, precluding removal of these claims to this court and requiring a remand to state court pursuant to § 1445(c). Before evaluating the propriety of a remand pursuant to this statute, the court will examine the historical background and development of this statute and its procedural implications regarding this case.

### 1. Historical background and procedural application of the statute
#### a. Historical background

■ Prior to the passage of this statute, Congress had become troubled by the alarming increase in the workload of the federal courts because of the removal of workers' compensation cases from the state courts to the federal courts. *See* S.Rep. No. 1830, *reprinted in* 1958 U.S.C.C.A.N. 3099, 3105. Consequently, Congress enacted this statute to reflect its concern for the "states' interest in administering their own workers' compensation schemes, the burdens on injured claimants of maintaining a federal court suit, and the incidence of federal court congestion." *Armistead v. C & M Transport*, 49 F.3d 43, 46 (1st Cir.1995) (citing *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 350, 81 S.Ct. 1570, 1572, 6 L.Ed.2d 890 (1961) (explaining purpose of limitation on removal); *see also* 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 3729 (2d ed. 1985) (characterizing workers' compensation suits as essentially local disputes that

should be kept in the state courts if possible). Regardless of whether the basis for removal is the existence of diversity or a federal question, a case may not be removed if it also arises under state workers' compensation law. *Humphrey*, 58 F.3d at 1245; *Spearman v. Exxon Coal USA, Inc.*, 16 F.3d 722, 725 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 377, 130 L.Ed.2d 328 (1994); *Walker v. Health Benefit Management Cost Containment*, 860 F.Supp. 1163, 1168 (N.D.Tex. 1994).

■ Because the removal statutes are intended to have uniform nationwide application, federal law determines whether section 1445(c) bars removal of Hanna's claims. *Humphrey*, 58 F.3d at 1245; *Grubbs v. General Elec. Credit Corp.*, 405 U.S. 699, 705, 92 S.Ct. 1344, 1349, 31 L.Ed.2d 612 (1972) (federal law governs construction of removal statutes). Thus, section 1445(c) "must be construed as setting up its own criteria, irrespective of local law, for determining in what instances suits" are to be removed." *Arthur v. E.I. Dupont de Nemours & Co.*, 58 F.3d 121, 125 (4th Cir.1995) (quoting *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104, 61 S.Ct. 868, 870, 85 L.Ed. 1214 (1941)). States cannot by definition or characterization enlarge or narrow the categories of cases subject to removal. *Arthur*, 58 F.3d at 125. A state could not prevent the removal of a tort case by labeling its common law of torts a workers' compensation law. *Id.* (citing *Spearman*, 16 F.3d at 724). Likewise, a state could not encourage removal of a tort case by labeling a claim arising under its workers' compensation laws an independent common-law tort. *Id.* (citing *Spearman*, 16 F.3d. at 730 (Rovner, J., dissenting)).

■ Likewise, the issue of whether Hanna's claims in this case "arise under" Iowa's workers' compensation laws is a matter of federal law. *Humphrey*, 58 F.3d at 1245. In *Gully v. First Nat'l Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), the Supreme Court considered whether a claim arose under federal law for purposes of applying 28 U.S.C. §§ 1331 and 1441.[1] *See*

---

1. 28 U.S.C. § 1331 and § 1441 established the district court's original and removal jurisdiction of actions "arising under" the Constitution, laws, or treaties of the United States, respectively.

*Gully,* 299 U.S. at 112–13, 57 S.Ct. at 97–98. The Court explained:

How and when a case arises under the Constitution or laws of the United States has been much considered in the books. Some tests are well established. To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.... The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another.... A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto ..., and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal.... Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense.

*Gully,* 299 U.S. at 112–13, 57 S.Ct. at 97–98 (citations omitted). Pursuant to this standard established by the Supreme Court, it is therefore necessary to determine whether Hanna's state court claims of retaliatory discharge and bad faith "arose under" Iowa's workers' compensation laws. Specifically, the court will examine whether the rights established pursuant to the Iowa workers' compensation laws are essential elements of Hanna's claims, whether the success of Hanna's claims will depend on how the corresponding workers' compensation laws are construed, whether a genuine and present controversy exists with reference to these statutes, and whether the controversy is disclosed upon the face of the complaint. *See Humphrey,* 58 F.3d at 1246.

§ 1331 provides, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Fleetguard and Liberty Mutual removed this case pursuant to § 1441(a), which provides,

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State

### b. *Procedural application*

■ Turning its attention to the procedural background of § 1445(c), the court recognizes the burden to show the requirements for removal have been met is on the party seeking to preserve the removal of the case to federal court, not the party moving for remand. *See* 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 3739 (2d ed. 1985 & Supp.1995); *see also Amoco Oil Co.,* 883 F.Supp. at 407; *In re Business Men's Assurance Co. of America,* 992 F.2d 181, 183 (8th Cir.1993) (burden is on defendant to establish jurisdiction and district court must resolve all doubts in favor of remand); *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1195 (9th Cir.1988) (burden of establishing federal jurisdiction is upon the party seeking removal and removal statute is to be strictly construed against removal jurisdiction); *Steel Valley Auth. v. Union Switch & Signal Div.,* 809 F.2d 1006, 1010 (3d Cir.1987), *cert. dismissed,* 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988). Placing the burden on the party seeking to preserve removal implements the congressional intent to place limitations on the removal of cases to federal court.

■ A further indication of the courts' implementation of limitations on removal jurisdiction exists in the courts' strict interpretation of the removal statutes against removal of a case to federal court, and therefore all doubts about removal should be resolved in favor of remand to state court. *Amoco Oil Co.,* 883 F.Supp. at 407; *Mize v. Amercraft Corp.,* 874 F.Supp. 356, 360 (M.D.Ala.1994) (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941)). In addition, in diversity cases, comity necessitates that federal courts allow state courts to proceed with their cases unless it is abundantly clear those cases are removable. *Id.* (citing *Smith v. MBL Life*

court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending....

28 U.S.C. § 1441(a).

*Assurance Corp.,* 727 F.Supp. 601, 603 (N.D.Ala.1989).

The court is mindful of the limitations Congress sought to place on the removal jurisdiction of the district courts, yet it is cognizant of the language and the requirements within § 1445(c) itself which mandate the necessity of a civil action arising under a state's workers' compensation laws before considering the action as nonremovable. With the historical background and procedural standards to guide it, the court now turns to the more probing task of evaluating Hanna's claims of retaliatory discharge and bad faith to determine whether these claims fit the classification of civil actions arising under state workers' compensation laws, the removal of such claims Congress sought to prevent.

### 2. Introduction to the Humphrey/Spearman analysis

Hanna argues her claims of retaliatory discharge and bad faith arise directly under Iowa's workers' compensation laws, and accordingly, these claims are not removable under § 1445(c). In *Humphrey v. Sequentia,* 58 F.3d 1238 (8th Cir.1995), the Eighth Circuit confronted the issue of whether a plaintiff's retaliatory discharge claim arose under Missouri's workers' compensation laws pursuant to § 1445(c). *Humphrey,* 58 F.3d at 1245–46. The district court in *Humphrey* had concluded the plaintiff's claim did not arise under Missouri's workers' compensation laws, basing its decision on the Seventh Circuit's decision in *Spearman v. Exxon Coal USA, Inc.,* 16 F.3d 722 (7th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 377, 130 L.Ed.2d 328 (1994). *Humphrey,* 58 F.3d at 1245 (citing *Spearman,* 16 F.3d at 725–26). In *Spearman,* the Seventh Circuit held that a plaintiff's claim of retaliatory discharge did not "arise under" Illinois workers' compensation laws for purposes of applying § 1445(c). *Spearman,* 16 F.3d at 725. In reaching its decision, the Seventh Circuit specifically acknowledged that the plaintiff's retaliatory discharge claim "was not embodied in the Illinois statutory workers' compensation scheme, but rather derived from the state's common law." *Humphrey,* 58 F.3d at 1245 (citing *Spearman,* 16 F.3d at 725, in turn,

citing *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 564, 384 N.E.2d 353, 358 (1978)). Adopting the Seventh Circuit's reasoning, the district court in *Humphrey* assumed the plaintiff's retaliatory discharge claim was a Missouri common-law tort claim and therefore held the claim did not arise under Missouri's workers' compensation laws. *Humphrey,* 58 F.3d at 1245. The Eighth Circuit reversed the district court's decision, finding instead that the plaintiff's claim did arise under Missouri's workers' compensation laws.

■■■ In response to the district court's misguided reliance on *Spearman* and the ambiguity surrounding the interpretation of § 1445(c), the Eighth Circuit seized the opportunity in *Humphrey* to clarify the application of § 1445(c) and facilitate the determination of whether a civil action "arises under" a state's workers' compensation law. If a state has a statutory provision within its workers' compensation law that creates the claim in question, the claim "arises under" the state's workers' compensation laws and is not removable. *Id.* On the other hand, if the claim is not expressly provided for in the state's statutory workers' compensation scheme, but rather is fashioned by the courts from a state's common law, the claim does not "arise under" the state's workers' compensation laws and therefore can be removed. *Id.* In *Spearman,* the plaintiff's retaliatory discharge claim was not created by an express provision within Illinois' statutory workers' compensation scheme; therefore, the retaliatory discharge cause of action did not "arise under" Illinois workers' compensation laws. *Spearman,* 16 F.3d at 725. In contrast, the Missouri Workers' Compensation Act specifically creates a retaliatory discharge cause of action for discrimination against an employee for filing a workers' compensation claim. *Humphrey,* 58 F.3d at 1245 (citing Mo.Rev.Stat. § 287.780). Because the plaintiff in *Humphrey* brought his original state court action pursuant to a Missouri workers' compensation statute which created a retaliatory discharge cause of action, his retaliatory discharge claim "arose under" Missouri's workers' compensation laws and therefore was not removable to federal court pursuant to § 1445(c). In light

of the *Humphrey* and *Spearman* decisions, this court must now discern whether Hanna's claims of retaliatory discharge and bad faith are expressly provided for in Iowa's statutory workers' compensation scheme or whether these claims are common-law tort claims under Iowa law.

### 3. Hanna's claim of retaliatory discharge

██ Hanna argues her claim of retaliatory discharge, which is "premised upon the use of various devices against [Hanna] because she had made workers' compensation claims against the defendants," arises directly under Iowa Code § 85.18. (Pl.'s Mot. to Remand ¶ 2). Section 85.18 of Chapter 85 of the Code, which addresses Iowa workers' compensation law, provides: "No contract, rule, or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this chapter except as herein provided." Although she does not explicitly articulate her argument, Hanna is claiming an action based on retaliatory discharge arises under § 85.18 because an employer cannot use retaliatory discharge to avoid paying workers' compensation benefits to an employee. Hanna contends that because her claim of retaliatory discharge arises under this particular workers' compensation law, her claim cannot be removed pursuant to 28 U.S.C. § 1445(c) because it is a civil action arising under a state's workers' compensation laws. *See* 28 U.S.C. § 1445(c).

In determining whether retaliatory discharge is a state common-law tort, the court need only look to the history of the development of this tort under Iowa law. In *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558 (Iowa 1988) (hereinafter *Springer I* ), the Iowa Supreme Court "recognized a common law tort action for retaliatory discharge based on the

filing of a workers' compensation claim by an at-will employee." [2] *Conaway v. Webster City Prods. Co.*, 431 N.W.2d 795, 796 (Iowa 1988) (citing *Springer I*, 429 N.W.2d at 560); *see also Niblo v. Parr Mfg.*, 445 N.W.2d 351, 352–53 (Iowa 1989); *Fogel v. Trustees of Iowa College*, 446 N.W.2d 451, 455 (Iowa 1989) (retaliatory discharge creates liability in tort when the discharge is against public policy); *Engstrom v. State*, 461 N.W.2d 309, 314 (Iowa 1990) (same); *French v. Foods, Inc.*, 495 N.W.2d 768, 771 (Iowa 1993) (recognizing retaliatory discharge as a common-law tort). The court construed the tort of retaliatory discharge as being within the public policy exception to the employment at will doctrine. *See Fink v. Kitzman*, 881 F.Supp. 1347, 1380 (N.D.Iowa 1995); *Thompto v. Coborn's Inc.*, 871 F.Supp. 1097, 1113 (N.D.Iowa 1994); *Wilcox v. Hy-Vee Food Stores, Inc.*, 458 N.W.2d 870, 872 (Iowa App. 1990); *Springer I*, 429 N.W.2d at 560.

██ Under this public policy exception, the Iowa Supreme Court has recognized causes of action for tortious discharge where an employer's retaliatory discharge would conflict with certain legislatively declared goals. *Thompto*, 871 F.Supp. at 1113 (citing *Lara v. Thomas*, 512 N.W.2d 777, 782 (Iowa 1994)); *O'Bryan v. KTIV Television*, 868 F.Supp. 1146, 1168 (N.D.Iowa 1994). Such public policies may be expressed in the constitution and the statutes of the state, *Borschel v. City of Perry*, 512 N.W.2d 565, 567 (Iowa 1994) (citing 82 Am.Jur.2d, *Wrongful Discharge* § 19, at 692 (1992)), although enforcement of the tort based on some policies is preempted by enforcement under the statutes embodying those policies themselves:

> The legislature may explicitly prohibit the discharge of an employee who acts in accordance with a statutory right or duty. *See, e.g.,* Iowa Code ch. 216 (1993) (civil

**2.** Initially in *Springer I*, the Iowa Supreme Court considered this cause of action to be one of tortious interference with a contract of hire. *Rouse v. Farmers State Bank of Jewell, Iowa*, 866 F.Supp. 1191, 1211 (N.D.Iowa 1994) (citing *Springer I*, 429 N.W.2d at 560). The court later determined this characterization "may have been misleading," and cited subsequent cases clarifying the court's development of this cause of action. *Rouse*, 866 F.Supp. at 1211 (citing *Springer v. Weeks & Leo Co., Inc.*, 475 N.W.2d 630, 632–33

(Iowa 1991) (hereinafter *Springer II* )). The court has construed *Springer I* as holding that if the discharge of an employee at will is in violation of public policy, the employee has a cause of action in tort against the employer. *Rouse*, 866 F.Supp. at 1211; *Thompto v. Coborn's, Inc.*, 871 F.Supp. 1097, 1113 (N.D.Iowa 1994); *Lara v. Thomas*, 512 N.W.2d 777, 782 (Iowa 1994); *Borschel v. City of Perry*, 512 N.W.2d 565, 567 (Iowa 1994).

rights statute transferred from Iowa Code ch. 601A). Discharge of an employee because of age, race, creed, color, sex, national origin, religion, or disability is an unfair employment practice. Iowa Code § 216.6. Remedies are provided employees who are discharged in violation of the statute. *See* Iowa Code § 216.15. Our civil rights statute, however, preempts an employee's claim that the discharge was in violation of public policy when the claim is premised on discriminatory acts. *Hamilton v. First Baptist Elderly Housing Found.*, 436 N.W.2d 336, 341–42 (Iowa 1989).

*Reedy v. White Consol. Indus., Inc.*, 890 F.Supp. 1417, 1432 (N.D.Iowa 1995) (citing *Borschel*, 512 N.W.2d at 567–68). The *Borschel* court then identified the circumstances in which Iowa courts had found a public policy basis for the tort:

> In the absence of an express prohibition, the court of appeals found an implied cause of action for wrongful termination when the reason for discharge is the employee's failure or refusal to violate a law in the course of employment. *Wilcox v. Hy–Vee Food Stores, Inc.*, 458 N.W.2d 870, 872 (Iowa App.1990). The court of appeals found that the violation of a statute prohibiting an employer from requiring an employee to take a polygraph examination was a violation of public policy, thus a private cause of action existed. *Id.* at 872. At the time the claim arose the statute did not expressly allow for a cause of action. This statute was later amended to so provide. *Id.*
>
> Also we have found an implied prohibition against retaliatory discharge based on an employee's exercise of a right conferred by a clearly articulated legislative enact-

ment. *See Lara v. Thomas*, 512 N.W.2d 777, 780 (Iowa 1994) (discharge in retaliation for filing partial unemployment claim); *Niblo v. Parr Mfg., Inc.*, 445 N.W.2d 351, 353 (Iowa 1989) (employee discharged because she threatened to file a workers' compensation claim); *Springer [I]*, 429 N.W.2d at 560 (cause of action exists when the employee's discharge serves to frustrate the public policy expressed in the workers' compensation statute).

*Borschel*, 512 N.W.2d at 568. A wrongful or retaliatory discharge in violation of public policy is therefore an intentional wrong committed by the employer against an employee who chooses to exercise some substantial right. *Niblo*, 445 N.W.2d at 355 (citing *Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363, 1366 (3d Cir.1979)).

In *Springer I*, the court acknowledged the largest category of cases where a judicial remedy has been recognized for discharging an employee at will in violation of public policy are cases such as the one before the court in which the alleged cause for the employee's termination is the employee's filing of a workers' compensation claim. *See Springer*, 429 N.W.2d at 560 (citations omitted); *see also Lara v. Thomas*, 512 N.W.2d at 781 (Iowa 1994) (discussing tort of retaliatory discharge as a public policy exception to common-law doctrine of employment-at-will); *Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 685 (Iowa 1990) (same); *Thompto*, 871 F.Supp. at 1113 (same). However, the Iowa Supreme Court recognized other courts' decisions granting judicial remedies for the discharge of at-will employees for reasons which contravene public policy other than retaliation for filing a workers' compensation claim.[3] *Springer I*, 429 N.W.2d at

---

3. A non-exhaustive, historical sampling of decisions that have granted judicial remedies for retaliatory discharge for public policy reasons other than the retaliation of filing a workers' compensation claim include: *Thompto*, 871 F.Supp. at 1114 (public policy allowing claim of wrongful discharge where employee inquired about cancer insurance coverage and requested an explanation of why coverage was not available; public policy also allowed claim of wrongful discharge where employee stated an intention to consult an attorney concerning a dispute with an employer); *Petermann v. Int'l Bd. of Team-*

*sters*, 174 Cal.App.2d 184, 344 P.2d 25, 27 (1959) (discharge for refusal of employee to commit perjury at employer's behest); *Parnar v. Americana Hotels*, 65 Haw. 370, 652 P.2d 625, 631 (1982) (discharge of employee for cooperation with grand jury investigating employer's anticompetitive business practices); *Palmateer v. Internat'l Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 16–17, 421 N.E.2d 876, 879–80 (1981) (discharge of employee for supplying law enforcement authorities with information concerning criminal acts of co-employee); *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549, 551 (1974) (discharge of employee for refusal to sub-

560. Retaliatory discharge pursuant to Iowa Code § 85.18 is but one example of the type of public policy violation that can be classifed within the exception to the employment-at-will doctrine. *See Thompto,* 871 F.Supp. at 1113; *Springer I,* 429 N.W.2d at 561. The court in *Springer I* further concluded retaliatory discharge should be classified as a common law tort as opposed to a workers' compensation issue. *Springer I,* 429 N.W.2d at 561. The court illustrated the difference between these two issues, stating "[retaliatory discharge for filing a workers' compensation claim] is not, for example, a workers' compensation issue. It is an employment law issue which may arise in a variety of circumstances, one of which happens to involve workers' compensation claims."[4] *Id.* at 561. Therefore, retaliatory discharge is a common-law tort that can derive from numerous types of employment situations; § 85.18 is only one example of a statute that will support a retaliatory discharge claim.

In her Motion to Remand, Hanna cites *Smith v. Smithway Motor Xpress, Inc.,* 464 N.W.2d 682, 685 (Iowa 1990), as an example of the Iowa Supreme Court holding that retaliatory discharge arose directly under § 85.18 of the Iowa Code. (Pl.'s Mot. to Remand ¶ 2). However, the Iowa Supreme Court has not drawn such a conclusion. The court merely cites § 85.18 as an example of a public policy that can create a retaliatory discharge cause of action if violated. *Smith v. Smithway Motor Xpress,* 464 N.W.2d 682, 685 (Iowa 1990). The court has not stated that this common-law tort "arises under"

§ 85.18 or any other Iowa workers' compensation statute.

Similarly, courts in other states without a statutory provision addressing retaliatory discharge based on the filing of a workers' compensation claim have also held that retaliatory discharge is an independent tort which does not arise under a state's workers' compensation laws for purposes of prohibiting removal pursuant to § 1445(c). *See Spearman,* 16 F.3d at 725–26 (where no explicit statutory provision prohibiting retaliatory discharge exists but instead only a general bar against retaliation interfering with any substantial public policy of Illinois, retaliatory discharge claim does not arise under state workers' compensation laws); *Gonzales v. City of Mesa,* 779 F.Supp. 1050, 1053 (D.Ariz. 1991) (where Arizona's workers' compensation statute does not prohibit or provide a private remedy for retaliatory discharge, the cause of action is a state judicially-created tort and does not arise under the state workers' compensation statutes).

■ On the other hand, where the retaliatory discharge cause of action is expressly created within a state's statutory workers' compensation scheme, courts have held that the claim "arose under" the state's workers' compensation laws for purposes of prohibiting removal under 28 U.S.C. § 1445(c). *See Humphrey,* 58 F.3d at 1246 (retaliatory discharge claim arose under workers' compensation law where the right established by Missouri's workers' compensation statute to not be discharged in retaliation for seeking a workers' compensation claim was an essential element of the claim); *Hummel v. Kame-*

mit to supervisor's sexual advances); *Nees v. Hocks,* 272 Or. 210, 536 P.2d 512, 514–15 (1975) (en banc) (discharge of employee for serving on a jury); and *Wandry v. Bull's Eye Credit Union,* 129 Wis.2d 37, 384 N.W.2d 325, 330 (1986) (discharge of employee for refusing to reimburse employer for loss on forged check which had been cashed with approval of employee's supervisor).

4. Other courts have drawn the same conclusion as the Iowa Supreme Court, classifying a retaliatory discharge claim for filing a workers' compensation claim as an employment law issue as opposed to an issue arising under workers' compensation law. The Illinois Supreme Court treats retaliatory discharge as an independent

tort action, distinct from workers' compensation laws. *See Spearman,* 16 F.3d at 725 (citing *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 564, 384 N.E.2d 353, 358 (1978); *Rubenstein Lumber Co. v. Aetna Life & Casualty Co.,* 122 Ill.App.3d 717, 78 Ill.Dec. 541, 542–43, 462 N.E.2d 660, 661–62 (1984); *Suddreth v. Caterpillar Tractor Co.,* 114 Ill.App.3d 396, 70 Ill.Dec. 329, 449 N.E.2d 203 (1983)). Furthermore, the Illinois Supreme Court "generalized its principle to bar retaliation that interfered with any substantial public policy of the state, thus liberating the tort from dependence on the workers' compensation laws." *Spearman,* 16 F.3d at 725; *see also Palmateer,* 421 N.E.2d at 876; *Darnell v. Impact Indus., Inc.,* 105 Ill.2d 158, 85 Ill.Dec. 336, 338, 473 N.E.2d 935, 937 (1984).

*hameha Schs./Bernice Pauahi Bishop Estate,* 749 F.Supp. 1023, 1025 (D.Haw.1990) (regardless of whether the statute has been codified as part of the state's workers' compensation chapter, the statute can still provide the basis for preventing the removal of a retaliatory discharge claim where the legislative intent behind the statute was to preserve the integrity of the workers' compensation law by protecting employees from these claims); *Pettaway v. Wayne Poultry Co.,* 791 F.Supp. 290, 291 (M.D.Ala.1992) (state workers' compensation statute creates a remedy for retaliatory discharge in conjunction with filing a workers' compensation claim; therefore, claim arose under state workers' compensation laws); *Jones v. Roadway Express, Inc.,* 931 F.2d 1086, 1092 (5th Cir.1991) (claim based on a statute outside of the workers' compensation chapter arises under workers' compensation laws of Texas where legislative history indicates the statute would not exist absent the existence of state workers' compensation laws);[5] *Roberts v. Citicorp Diners Club, Inc.,* 597 F.Supp. 311, 314–15 (D.Md.1984) (retaliatory discharge for filing workers' compensation claim arises under Maryland workers' compensation statutes); *Thomas v. Kroger Co.,* 583 F.Supp. 1031, 1037 (S.D.W.Va.1984) (a statute prohibiting an employer's discrimination against an employee based on filing a workers' compensation claim is a law arising under West Virginia workers' compensation laws); *Kemp v. Dayton Tire & Rubber Co.,* 435 F.Supp. 1062, 1063 (W.D.Okla.1977) (a statute prohibiting an employer's discrimination against an employee's participation in workers' compensation proceedings is a law arising under Oklahoma workers' compensation laws). The court, however, does not find these cases applicable because Iowa courts have classified the tort of retaliatory discharge as an independent tort derived from Iowa's common law, as opposed to being expressly created in a provision within Iowa's statutory

workers' compensation scheme. *Humphrey,* 58 F.3d at 1245 (citing *Kelsay,* 384 N.E.2d at 358); *see also Barske v. Rockwell Internat'l Corp.,* 514 N.W.2d 917, 922 (Iowa 1994) (examining the elements of the tort of retaliatory discharge under state law); *Smith v. ADM Feed Corp.,* 456 N.W.2d 378, 384 (Iowa 1990) (classifying retaliatory discharge as a common-law tort). Because the Iowa cause of action of retaliatory discharge is not expressly established within Iowa's statutory workers' compensation scheme, Hanna's claim cannot arise under the workers' compensation statute, § 85.18. The court concludes that Hanna's claim of retaliatory discharge is an independent common-law tort that does not arise under Iowa Code § 85.18. Although § 85.18 may furnish the public policy that the employer must respect, the court does not interpret this fact alone to mean that the tort "arises under" Iowa's workers' compensation laws. A retaliatory discharge claim may be adjudicated without any inquiry into the meaning of the workers' compensation laws. Furthermore, the issue in deciding a retaliatory discharge claim is usually the employer's motive for adverse action rather than the entitlement to compensation for injury on the job. *Spearman,* 16 F.3d at 725; *Gully,* 299 U.S. at 114–15, 57 S.Ct. at 98–99. In *Humphrey,* in holding that the tort of retaliatory discharge arose under Missouri's workers' compensation law, the Eighth Circuit stated, "Under the plain meaning of the statute, where a state legislature enacts a provision within its workers' compensation laws and creates a specific right of action, a civil action brought to enforce that right of action is, by definition, a civil action arising under the workers' compensation laws of that state and therefore § 1445(c) applies...." *Humphrey,* 58 F.3d at 1246. Missouri's workers' compensation law includes a statute creating a retaliatory discharge claim; Iowa has no such statute creating this cause of action. Because the

**5.** In *Jones,* the 5th Circuit resolved a split in authority among the Texas district courts regarding the interpretation of the Texas statute in question. Prior to this decision, two district court decisions had determined a cause of action under article 8307c was not a civil action arising under the workers' compensation laws of Texas. *See generally Chatman v. Saks Fifth Ave.,* 762

F.Supp. 152 (S.D.Tex.1991); *Richardson v. Owens–Illinois Glass Container, Inc.,* 698 F.Supp. 673 (W.D.Tex.1988). The court in *Jones,* however, rejected these two decisions as viewing the scope of § 1445(c) too narrowly and held instead that a civil action under article 8307c is a civil action arising under the workers' compensation laws of Texas.

Iowa legislature omitted this cause of action from its statutory scheme, the court concludes retaliatory discharge is not a civil action arising under Iowa's worker's compensation laws and is properly removable to federal court pursuant to 28 U.S.C. § 1441(a).

#### 4. Hanna's claim of bad faith

Hanna argues that the tort of bad faith premised upon Fleetguard and Liberty Mutual's bad faith failure to pay workers' compensation benefits to Hanna is a claim that arises under section 85.27 of the Iowa Code, a statute within Iowa workers' compensation law; therefore, this claim cannot be removed pursuant to 28 U.S.C. § 1445(c). (Pl.'s Mot. to Remand ¶ 3). Whereas the Eighth Circuit had addressed the tort of retaliatory discharge in conjunction with § 1445(c) in *Humphrey*, 58 F.3d at 1245–46, the court has not yet addressed the issue of whether the tort of first-party bad faith arises under Iowa Code § 85.27 or under the Iowa workers' compensation statutes in general, precluding removal of a bad faith claim pursuant to § 1445(c).

The tort of first-party bad faith resulting from an insurer's refusal to settle a first-party insurance claim with an insured was first recognized by the California Supreme Court. In *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973), an insured brought an action against his insurers and others, alleging bad faith in the denial of payment on three fire insurance policies. The California Supreme Court held:

> [I]n every insurance contract there is an implied covenant of good faith and fair dealing. The duty to so act is immanent in the contract whether the company is attending to the claims of third persons against the insured or the claims of the insured itself. Accordingly, when the in-

surer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort.

*Id.*, 510 P.2d at 1038.

The development of the tort of first-party bad faith is a fairly recent development under Iowa law, beginning with the recognition of the tort in 1988. Prior to 1988, the Iowa Supreme Court had yet to establish first-party bad faith as a common-law tort in Iowa. *See e.g., Hoekstra v. Farm Bureau Mut. Ins. Co.*, 382 N.W.2d 100, 111 (Iowa 1986); *AMCO Ins. Co. v. Stammer*, 411 N.W.2d 709, 712 (Iowa App.1987). In *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790 (Iowa 1988), the Iowa Supreme Court adopted first-party bad faith as a cause of action. *Johnson v. Farm Bureau Mut. Ins. Co.*, 533 N.W.2d 203, 207 (Iowa 1995); [6] *Stahl v. Preston Mut. Ins. Ass'n*, 517 N.W.2d 201, 203 (Iowa 1994); *White v. Northwestern Bell Telephone Co.*, 514 N.W.2d 70, 77 (Iowa 1994); *Kelly v. State Farm Mut. Auto. Ins. Co.*, 764 F.Supp. 1337, 1340 (S.D.Iowa 1991) (citing *Dolan*, 431 N.W.2d at 794 (Iowa 1988) (adopting the *Anderson* test for first-party bad faith established in *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368 (1978)); *Kiner v. Reliance Ins. Co.*, 463 N.W.2d 9, 12 (Iowa 1990) (recognizing the tort of bad faith in Iowa and modifying the second prong of the first-party bad faith test therein); *Reuter v. State Farm Mut. Auto. Ins. Co.*, 469 N.W.2d 250, 253 (Iowa 1991) (recognizing the tort of bad faith in Iowa and adopting the *Kiner* modification of the second prong of the test); *North Iowa State Bank v. Allied Mut. Ins. Co.*, 471 N.W.2d 824, 828 (Iowa 1991) (same). The court has held that insurance contracts contain an implied covenant of good faith that "neither party will do anything to injure the rights of the other in receiving the benefit of the agreement." *Johnson*, 533 N.W.2d at 207; *Kooyman v. Farm Mut. Ins. Co.*, 315 N.W.2d 30, 33 (Iowa 1982). The

---

6. The Iowa Supreme Court had previously adopted the tort of third-party bad faith, in which an insurer is alleged to have refused in bad faith to settle a third party's claim against the insured within the policy limits, thus exposing the insured to monetary liability exceeding policy limits. *Johnson*, 533 N.W.2d at 207. On the other hand, first-party bad faith claims involve an in-

sured's attempt to recover for his or her own losses allegedly covered by the insurance policy. *Id.* In *Johnson*, the court rejected recognition of a claim of "reverse bad faith," which would be a cause of action in favor of insurers when an insured brings a frivolous bad faith claim against the insurer." *Id.* at 208.

court adopted the tort because "'traditional damages for breach of contract will not adequately compensate an insured for an insurer's bad faith conduct.'" *Stahl*, 517 N.W.2d at 203 (quoting *Dolan*, 431 N.W.2d at 794; and citing *Nassen v. National States Ins. Co.*, 494 N.W.2d 231 (Iowa 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1846, 123 L.Ed.2d 470 (1993)). The court explained that

> "the nature of the contractual relationship between the insurer and insured" justified this conclusion. *Dolan*, 431 N.W.2d at 794. Though we declined to recognize a fiduciary relationship in first-party situations, we determined that a bad faith tort would serve to redress the "inherently unequal bargaining power" between the insurer and the insured. *Id.*

*Stahl*, 517 N.W.2d at 203. The court has also noted that the unequal bargaining power in question arises from the fact that insurance policies are contracts of adhesion. *White*, 514 N.W.2d at 77; *Dolan*, 431 N.W.2d at 794. A first-party bad faith suit is a claim against an insurer for bad faith failure to pay its own insured, whereby an insurance company intentionally denies or fails to process an insured's claim without reasonable basis for that action.[7] *Dolan*, 431 N.W.2d at 792; *see also Weber v. State Farm Mut. Auto. Ins. Co.*, 873 F.Supp. 201, 204 (S.D.Iowa 1994) (citing *Reuter v. State Farm Mut. Auto. Ins. Co.*, 469 N.W.2d 250, 253 (Iowa 1991), in turn, citing *Anderson v. Continental Ins. Co.*, 85

Wis.2d 675, 271 N.W.2d 368 (1978)); *Kelly*, 764 F.Supp. at 1340 (citing Phelan, *The First Party Dilemma: Bad Faith or Bad Business?*, 34 Drake L.Rev. 1031, 1032 (1985–86)).

In 1992, the Iowa Supreme Court extended this tort to redress the bad-faith nonpayment of workers' compensation benefits. *Squealer Feeds v. Pickering*, 530 N.W.2d 678, 683 (Iowa 1995) (citing *Brown v. Liberty Mut. Ins. Co.*, 513 N.W.2d 762, 763 (Iowa 1994)); *White*, 514 N.W.2d at 77 (citing *Boylan v. American Motorists Ins. Co.*, 489 N.W.2d 742, 744 (Iowa 1992)); *Brown*, 513 N.W.2d at 764; *Boylan*, 489 N.W.2d at 744. The court in *Boylan* concluded that section 85.27 of the Iowa Code imposes an affirmative obligation on the workers' compensation insurers to offer treatment promptly that is "reasonably suited to treat the injury without undue inconvenience to the employee." *Boylan*, 489 N.W.2d at 743 (citing I.C. § 85.27).[8]

Although the Iowa Supreme Court has extended the tort of first-party bad faith to cover nonpayment of workers' compensation benefits, this extension does not automatically warrant the conclusion that Hanna's claim arises under § 85.27 or any of Iowa's workers' compensation laws in general. Hanna's claim of bad faith is a cause of action which arises apart from any right to recover under the Iowa workers' compensation laws. The basis of this cause of action is the relationship between the insurer and the insured, and the duty of good faith arises out

---

**7.** In *Dolan*, the Iowa Supreme Court set out the following reasons cited by other courts for adopting the first-party bad faith tort:

1. Without the tort, "an insurance company can arbitrarily deny coverage and delay payment of a claim" to its insured "with no more penalty than interest on the amount owed;"
2. Due to the "uneven bargaining power between an insured and its insurer, the insured needs the extra leverage the tort of bad faith would provide to even the positions;"
3.. "Insurance contracts are contracts of adhesion;"
4. The bad faith tort "is justified because of the nature of the insurance industry, which is imbued with the public interest;"
5. An insured is often "suffering from physical injury or economic loss when bargaining with the insurance company" and hence "the vulnerable position justifies the additional remedy of a bad faith cause of action;"

6. "The recognition of the bad faith tort in third-party situations justifies its recognition in first-party situations;" and
7. "When an insured purchases insurance, she is purchasing more than financial security; she is purchasing peace of mind," and "therefore, the extra remedy of bad faith is needed to insure she receives the benefit of her bargain." *Dolan*, 431 N.W.2d at 791–92 (quoting Phelan, *The First Party Dilemma: Bad Faith or Bad Business?*, 34 Drake L.Rev. 1031, 1035–36 (1985–86)) (citing *Spencer v. Aetna Life & Casualty Ins. Co.*, 227 Kan. 914, 611 P.2d 149, 152–53 (1980)). The Iowa Supreme Court justified its recognition of a first-party bad faith tort based on the above-mentioned purposes. *Dolan*, 431 N.W.2d at 794.

**8.** Although § 85.27 speaks only of the employer's obligation, the commissioner's regulations apply these obligations to the employer's insurance carrier. *Boylan*, 489 N.W.2d at 743 (citing 343 Iowa Admin.Code 2.3, 4.10).

of the insurance contract and runs from the insurer to the insured. *Chadima v. National Fidelity Life Ins. Co.,* 848 F.Supp. 1418, 1429 (S.D.Iowa 1994), *rev'd on other grounds,* 55 F.3d 345 (8th Cir.1995), *petition for cert. filed,* 64 U.S.L.W. 3086 (U.S. July 26, 1995) (No. 95–166, 942157). Thus, first-party bad faith claims are based on the lack of good faith in failing to pay the insured's own claim, irrespective of the original job-related injury. *Id.* (citing *Dolan,* 431 N.W.2d at 792).

▇ The purpose of § 1445(c) is to give state courts the primary responsibility of handling those matters arising out of workers' compensation laws. *Armistead,* 49 F.3d at 46; *see also Horton,* 367 U.S. at 350, 81 S.Ct. at 1571 (1961) (explaining purpose of limitation on removal); 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 3729 (2d ed. 1985). However, Iowa workers' compensation laws are creatures of statute, *see* Iowa Code § 85.1 *et seq.,* whereas the duty of good faith that flows from the insurer to the insured is a judicially-created obligation owed by all insurers and applicable to all policies of insurance. *See generally Yegge v. Integrity Mut. Ins. Co.,* 534 N.W.2d 100, 102 (Iowa 1995) (duty of good faith flowing from insurer to insured in homeowners' insurance contract); *Morgan v. American Family Mut. Ins. Co.,* 534 N.W.2d 92, 96 (Iowa 1995) (same duty regarding uninsured motorist insurance coverage); *Barske v. Rockwell Internat'l Corp.,* 514 N.W.2d 917, 922 (Iowa 1994) (finding a duty of good faith and fair dealing to be a right derived from the insurance contract itself in the context of a labor dispute); *Dimitroff v. State Farm Mut. Automobile Ins. Co.,* 647 N.E.2d 339, 341 (Ind.Ct.App.1995) (duty of good faith between insurer and insured regarding automobile insurance); *Henry v. Chubb Lloyds Ins. Co. of Texas,* 895 S.W.2d 810, 813 (Tex.Ct.App.1995) (same duty regarding underinsured motorist coverage); *Hennessey v. Vanguard Ins. Co.,* 895 S.W.2d 794, 799–800 (Tex.Ct.App.1995) (same duty concerning homeowners' insurance); *Zoppo v. Homestead Ins. Co.,* 71 Ohio St.3d 552, 644 N.E.2d 397, 397 (1994) (same duty concerning fire insurance). Consequently, many bad faith claims have nothing to do with the Iowa workers' compensation laws. *See generally Yegge,* 534 N.W.2d at 102 (Iowa 1995) (bad faith cause of action regarding a homeowners' insurance contract); *Morgan,* 534 N.W.2d at 96 (Iowa 1995) (same cause of action regarding uninsured motorist insurance coverage); *Dimitroff,* 647 N.E.2d at 341 (Ind.Ct.App.1995) (same cause of action regarding automobile insurance); *Henry,* 895 S.W.2d at 813 (Tex.Ct.App.1995) (same cause of action regarding underinsured motorist coverage); *Hennessey,* 895 S.W.2d at 799–800 (Tex.Ct.App.1995) (same cause of action concerning homeowners' insurance); *Zoppo,* 644 N.E.2d at 397 (Ohio 1994) (same cause of action concerning fire insurance). Adopting this line of reasoning, one court has recently held that "singl[ing] out bad faith claims based upon a wrongful denial of workers' compensation benefits for disparate treatment, by preventing their removal, would unnecessarily expand the reach of § 1445(c)." *Haines v. National Union Fire Ins. Co.,* 812 F.Supp. 93, 95 (S.D.Tex.1993).[9]

9. District courts within the Fifth Circuit have split on whether § 1445(c) prohibits removal of first-party bad faith cases. In *Bastian v. Travelers Ins. Co.,* 784 F.Supp. 1253 (N.D.Tex.1992), the court denied the plaintiff's motion to remand pursuant to § 1445(c) where plaintiff sought damages from his workers' compensation carrier on theories of negligence as well as a common law bad faith claim. *Id.* at 1258. Although the injuries alleged by the plaintiff caused by the insurer's conduct related to the workplace injury made the basis of the plaintiff's compensation claim, the court found that the first-party bad faith tort claim alleged an independent cause of action not created or determined by a provision of Texas workers' compensation laws. *Id.*

On the other hand, the opposite result was reached in *Almanza v. Transcontinental Ins. Co.,* 802 F.Supp. 1474 (N.D.Tex.1992) and *Walker v. Health Benefit Management Cost Containment,* 860 F.Supp. 1163, 1169 (N.D.Tex.1994). *Walker* adopted the reasoning in *Almanza* in finding that a first-party bad faith claim does arise under the Texas workers' compensation laws because these laws, which create a cause of action for claimants, form an essential ingredient in a claim for bad faith. The court in these two decisions found that "while there are elements of common law in the workers' compensation claim duty of good faith and fair dealing, a bad faith claim is contingent upon establishing a valid workers' compensation claim." *Walker,* 860 F.Supp. at 1169 (quoting *Almanza,* 802 F.Supp. at 1479).

The court finds this logic persuasive, in light of the Eighth Circuit's holding in *Humphrey*, 58 F.3d at 1245–46. In *Humphrey*, the Eighth Circuit included a retaliatory discharge claim within the purview of § 1445(c) where a statutory provision within a state's workers' compensation laws created a specific right of action for retaliatory discharge. As with Hanna's retaliatory discharge claim, Hanna's bad faith claim is an independent common-law tort which was not expressly established within the statutory scheme of Iowa's workers' compensation laws. Bad faith is not an essential element of a workers' compensation claim, and a bad faith claim may be adjudicated without any inquiry into the meaning of the workers' compensation laws. Because the Iowa legislature omitted this cause of action from its statutory scheme, the court concludes bad faith is not a civil action arising under Iowa's worker's compensation laws and is properly removable to federal court pursuant to 28 U.S.C. § 1441(a).

### B. The Existence Of Diversity Between Hanna and Fleetguard

 Hanna argues that "although Fleetguard, Inc. may or may not be incorporated in a state other than Iowa, it has its principal place of business, i.e. nerve center, in Iowa." (Pl.'s Mot. to Remand ¶ 6). As a court of limited jurisdiction, a federal court has an obligation to assure itself that it has subject matter jurisdiction in every case. *Thomas v. St. Luke's Health Sys., Inc.*, 869 F.Supp. 1413, 1424 (N.D.Iowa 1994) (citing *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir.1987)). For the court to maintain subject matter jurisdiction over this case, complete diversity of citizenship must exist between the adverse parties. *Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806). Consequently, if Fleetguard is a citizen of the state of Iowa, this court would lack jurisdiction to hear this case because the plaintiff, LeAnn Hanna, is also from Iowa. Defen-

dants Fleetguard and Liberty Mutual removed this case to this court pursuant to 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1332(c)(1), in cases pursuant to § 1441(a), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business...." 28 U.S.C. § 1332(c)(1). Therefore, if either the state of incorporation or the corporation's principal place of business is Iowa, there will be no diversity. Here, Hanna is not alleging that Iowa is Fleetguard's state of incorporation, and Fleetguard has stated in its Notice of Removal and in its Affidavit accompanying its Resistance to Hanna's Motion to Remand that its state of incorporation is Indiana. Therefore, this fact does not appear to be in dispute. However, Hanna has alleged that Iowa is the location of Fleetguard's principal place of business, rather than Tennessee as Fleetguard claimed in its Notice of Removal, and accordingly, Fleetguard is a citizen of Iowa pursuant to § 1332(c)(1).

 The party who is attempting to establish federal jurisdiction bears the burden of proof if diversity of citizenship is challenged. *Bullock v. Wiebe Constr. Co.*, 241 F.Supp. 961, 962 (S.D.Iowa 1965) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). Therefore, even if the plaintiff has moved to remand the case back to state court, the defendant still retains the burden of showing the existence of complete diversity between the adverse parties. *Bullock*, 241 F.Supp. at 962. Thus, in this case, Fleetguard has the burden of proving its principal place of business is not Iowa.

Determining a corporation's principal place of business involves a thorough investigation into the intricate details surrounding the nature or essence of a corporation's business and activities. This intense level of scrutiny

However, yet another Texas court found *Almanza* unpersuasive, arguing "[if the Texas legislature were to codify the duty of good faith and fair dealing, its codification undoubtedly would be with laws pertaining to the obligations of insurers generally, not with workers' compensation laws." *See Warner v. Crum & Forster Commercial Ins. Co.*, 839 F.Supp. 436, 439 (N.D.Tex.

1993). In *Warner*, the court held that "rather than 'arising under' the workers' compensation laws of Texas, bad-faith claims at best 'relate to' those laws." *See id.* n. 5. The court further concluded if Congress had intended to make all claims "related to" a particular state's workers' compensation laws non-removable, it could have easily done so. *See id.*

is embodied in the tests which other courts have developed or adopted to determine a corporation's principal place of business for purposes of ascertaining the existence or lack of federal diversity jurisdiction. The court will proceed with its analysis of the tests governing the determination of a corporation's principal place of business in order to subsequently ascertain Fleetguard's citizenship pursuant to § 1332(c)(1).

### 1. Tests to determine principal place of business

There are two tests in particular that have been used by the courts to determine where a party's principal place of business is located. One test is referred to the "nerve center" test, and this test emphasizes the location of the managerial and policy making functions of the corporation. *See Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862, 865 (S.D.N.Y.1959) (case which developed the "nerve center" test); *Breitman v. May Co. California*, 37 F.3d 562, 563 (9th Cir.1994) (adopting nerve center test); *Krueger v. Cartwright*, 996 F.2d 928, 931 (7th Cir.1993) (same); *Wheelabrator Frackville Energy Co. v. Morea Culm Servs., Inc.*, 741 F.Supp. 536, 540 (E.D.Pa.1990) (same). The second test is known as the "place of activity" test, which focuses on the service and production activities of a corporation and examines the places where the corporation has the greatest contact with the public, the largest number of employees, the greatest assets, and derives most of its income. *See Mahoney v. Northwestern Bell Telephone Co.*, 258 F.Supp. 500, 502 (D.Neb.1966), *aff'd*, 377 F.2d 549 (8th Cir.1967) (favoring the center of corporate activity test); *Tubbs v. Southwestern Bell Telephone Co.*, 846 F.Supp. 551, 554 (S.D.Tex.1994) (using production test to find defendant's principal place of business and then remanding for lack of diversity); *AFA Enters., Inc. v. American States Ins. Co.*, 842 F.Supp. 902, 907–08 (S.D.W.Va.1994) (rejecting the nerve center test for determining principal place of business); *Nerco Delamar Co. v. North American Silver Co.*, 702 F.Supp. 809, 811 (D.Idaho 1989); *Associated Petroleum Producers, Inc. v. Treco 3 Rivers Energy Corp.*, 692 F.Supp. 1070, 1075 (E.D.Mo.1988). In later decisions, some courts began to see these two "principal place of business" tests as reconcilable even though other courts still speak of the two tests of determining a corporation's principal place of business. *See Federal Beef Processors, Inc. v. CBS Inc.*, 851 F.Supp. 1430, 1433 (D.S.D.1994) (concluding that "most courts, regardless of which test they purport to endorse, consider all the facts and circumstances of a corporation's business activities and do not necessarily succumb to the temptation of placing labels on the process of analysis"); *see also* 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 3625 (2d ed. 1985) (citing cases). The Eighth Circuit has minimized this split of authority concerning the determination of principal place of business by pointing out that most courts combine these two tests, whether they admit it or not. In *Mahoney v. Northwestern Bell Tel. Co.*, 258 F.Supp. 500, 502 (D.Neb.1966), *affirmed per curiam*, 377 F.2d 549 (8th Cir.1967), the court provided:

██ Even the cases which have taken the [place of activities]

> approach have not ignored the location of the executive offices and of management activity.... Conversely, those cases which recognize the 'nerve center' test have not done so without considering the location of the company's operations. In fact, all of the cases which have come to the attention of this Court agree that the determination must be based on the facts of each individual case.

*Id.* As evidence of the need to examine the factors underlying both tests, other courts advocated the "total activity" test, which incorporates both the nerve center and the place of activity tests. *Toms v. Country Quality Meats, Inc.*, 610 F.2d 313, 315 (5th Cir.1980); *White v. Halstead Indus., Inc.*, 750 F.Supp. 395, 397 (E.D.Ark.1990) (describing the total activities test as a hybrid of the "nerve center" and the "corporate activities" tests which involves considering all the circumstances surrounding a corporation's business to determine its principal place of business); *J.A. Olson Co. v. City of Winona*, 818 F.2d 401, 404 (5th Cir.1987) (advocating

the "total activity" test); *Barrantes Cabalceta v. Standard Fruit Co.,* 667 F.Supp. 833, 834 (S.D.Fla.1987) (the "total activity test" embraces two tests), *affirmed in part, reversed in part on other grounds,* 883 F.2d 1553 (11th Cir.1989). The principal place of business of a corporation can only be decided after a careful consideration of the facts, taking into account the character of the corporation, its purposes, the kind of business in which it is engaged, and the situs of its operations. *Bullock v. Wiebe Constr. Co.,* 241 F.Supp. 961, 963 (S.D.Iowa 1965) (noting the "nerve center" and "operating assets" tests are at most guides and are not rigid tests which are automatically determinative of a corporation's principal place of business); *High Ridge Park Assoc. v. Nycom Info. Servs., Inc.,* 821 F.Supp. 835, 837 (D.Conn. 1993); *Ginn Iowa Oil Co. v. Iowa Dep't of Transp.,* 506 F.Supp. 967, 971 (S.D.Iowa 1980) (determination of principal place of business is a question of fact); *Ratner v. Hecht,* 621 F.Supp. 378, 381 (N.D.Ill.1985) (no single factor or test is determinative in assessing a corporation's principal place of business, but rather requires a consideration of the corporation's activities on a case-by-case basis); 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 3625 (2d ed.1985) (citing cases); *cf. Gavin v. Read Corp.,* 356 F.Supp. 483, 486 (E.D.Pa.1973) (agreeing the determination of a corporation's principal place of business is a question of fact, but concluding that the determination as to what facts are helpful in deciding a corporation's principal place of business is a question of law).

Where a corporation is engaged in "far-flung" and varied activities, the court will determine a corporation's principal place of business for purposes of diversity jurisdiction by locating the nerve center from which the corporation's officers direct, control and coordinate all activities regardless of locale, in advancement of the corporate objective. *Force v. E.I. DuPont de Nemours,* 770 F.Supp. 335, 336 (E.D.Tex.1991) (citing *Scot Typewriter Co.,* 170 F.Supp. at 865); *Kubin v. Miller,* 801 F.Supp. 1101, 1112 (S.D.N.Y. 1992); *Atlanta Shipping Corp., Inc. v. Chemical Bank,* 631 F.Supp. 335, 342 (S.D.N.Y. 1986), *affirmed,* 818 F.2d 240 (2d Cir.1987); *Scot Typewriter Co.,* 170 F.Supp. at 862. Factors considered in using the "nerve center" test are: "place where corporate decisions are made; place where the corporation is funded; place where its general counsel, director, officers and shareholders are located; place where primary bank account exists, and place of its principal office and corporate headquarters." *Ratner,* 621 F.Supp. at 378.

## 2. Fleetguard's principal place of business

The existence of a manufacturing facility within a state does not necessarily indicate that the state is the corporation's principal place of business. In *Gafford v. General Elec. Co.,* 997 F.2d 150 (6th Cir.1993), the court found that New York was the corporation's principal place of business for purposes of diversity jurisdiction where the evidence showed that the corporation's operations were dispersed and that the corporation's employee records were kept in New York, not withstanding evidence that the corporation had an extensive manufacturing plant in Kentucky. *Gafford,* 997 F.2d at 163. Here, Hanna alleges that Iowa is Fleetguard's principal place of business because Iowa is the location of its "nerve center." (Pl.'s Mot. to Remand ¶ 6.). However, Fleetguard has produced evidence in an affidavit from its secretary that Iowa is not the location of its nerve center. The only element of Fleetguard's business that exists in Iowa is a manufacturing facility in Lake Mills, Iowa. The highest administrative position at this facility is the Plant Manager who is a subordinate to the executive officers located in Nashville, Tennessee. The personnel at the Lake Mills, Iowa, facility are only granted limited autonomy necessary for the operation of the Lake Mills plant. The actual corporate direction derives from Nashville, Tennessee, which Fleetguard alleges has been the principal place of business since 1989. Nashville is the location of Fleetguard's headquarters and is the nerve center from which Fleetguard's officers direct, control and coordinate all activities and make all significant policy and managerial decisions without regard to location, in furtherance of

the corporate objectives. Matters including the handling of collections, the filing of certain tax returns, the collection and disbursement of revenue, and the management of corporate human resources, sales, and finance all occur in Tennessee, along with the maintenance of Fleetguard's corporate financial books and records in Nashville. In addition, Fleetguard has manufacturing and distribution facilities in three states and eleven countries, as opposed to having one sole manufacturing facility in Iowa. In light of all the facts regarding Fleetguard's business presented to this court, the court concludes that Tennessee is the nerve center or the principal place of business of Fleetguard, not Iowa. Fleetguard's corporate operations are dispersed in different states and countries. Also, the only contact Fleetguard has with Iowa is that one of its manufacturing facilities is located there. Consequently, because Fleetguard has met its burden of proof in showing Iowa is not Fleetguard's principal place of business, complete diversity exists between Hanna and Fleetguard and federal subject matter jurisdiction remains intact.

### III. CONCLUSION

After examining the scope of 28 U.S.C. § 1445(c), the court concludes that Hanna's claims of retaliatory discharge and bad faith are not claims arising under Iowa's workers' compensation laws and accordingly, Fleetguard and Liberty Mutual properly removed the claims to federal court. The Iowa legislature did not enact specific statutory provisions creating retaliatory discharge and bad faith causes of action within the state workers' compensation laws. Where there are no specific statutory provisions creating these causes of action, the court cannot re-characterize these independent common-law torts as causes of action arising under workers' compensation law merely because the causes of action have some relationship to the workers' compensation laws. As a result, the court denies Hanna's motion to remand these two causes of action pursuant to 28 U.S.C. § 1445(c). In addition, these claims are removable on diversity grounds because Fleetguard's principal place of business is in Tennessee, not in Iowa; therefore, complete diversity exists between Hanna, a citizen of Iowa, and Fleetguard, a citizen of Tennessee. Because these two claims were properly removed from state court and because there is diversity between the adverse parties in this case, the court denies Hanna's motion to remand this case to state court.

**IT IS SO ORDERED.**